## W. C. HAGAR vs. FRANK J. WIKOFF.

1. Where public lands are settled upon for townsite purposes, one who improves a lot by erecting a building thereon for purposes of trade, business or residence, is an occupant, as contemplated by act of congress approved May 4, 1890, relating to townsites in Oklahoma, and is entitled to a conveyance from the townsite trustees, although he may have never personally resided upon said lot or in the town or territory, in the absence of any superior right.

2. A person who goes into possession of a town lot upon public lands as a tenant of one who has improved the lot by erecting a building thereon, will not be heard to assert a claim adverse to his landlord by reason of occupancy, settlement or improvement until he shall have vacated the premises and surrendered possession to his landlord.

3. The doctrine of estoppel applies between landlord and tenant and does not depend upon the validity of the landlord's title.

4. When a married woman rents a house and lot and enters into possession of it with her husband, who resides with her, and he does not at once dissent and repudiate the contract, the lease inures to his benefit and he becomes the tenant of the lessor.

5. The interest in a town lot on public lands, acquired by occupancy, may be transferred and conveyed, and the grantee will succeed to all the rights of the occupant as against one who holds as a tenant of the grantor.

6. The question of permitting a defendant to plead after default is discretionary with the trial court, and its action will not be reversed unless it appears that such discretion has been abused to the manifest injury of the party complaining.

*Error from the District Court of Payne County.*

### STATEMENT OF CASE.

The town of Stillwater was settled soon after the opening of Oklahoma in 1889, at a time when there was no law in force in the territory to carry into effect any rights acquired under § 2387, R. S. U. S.; at the settlement of the townsite one Berkey was a claimant of lot 14, in block 42, the lot in controversy, and about ten days after the settlement of the townsite, erected a frame building on the lot, which was rented to the provisional government of Stillwater and used by the officers during the summer of 1890, as a clerk's office and council chamber.

Berkey left the town about thirty days after the town was opened and transferred his interest in said lot to James M. Stafford, who became the owner of the building thereon. Stafford placed the property in the custody of Wikoff, the defendant in this case, as his agent. In November, 1889, Wikoff, as agent for Stafford, rented the property to Mrs. Hager, the wife of the plaintiff, and the plaintiff and his wife went into possession of the premises under said leasing and did business and resided in the house on said lot, and paid rent therefor to Wikoff until 1st of July, 1890, at which time they ceased to pay rent and Hager placed a tent on the lot and took up his residence in the tent, and afterwards, erected a building on the lot and began asserting a claim to said lot by reason of his pos-

session and actual occupancy. Hager and wife, from the time they went into possession under the lease from Stafford, remained continuously in possession until the time of trial. Before the townsite was entered at the United States land office, Stafford sold and transferred his interest in the property to the defendant, Wikoff, who succeeded to his rights in the property, on May 14, 1890. The lot was in the business part of the town and was located for a business lot. Stafford never resided in the town of Stillwater at any time and Berkey remained there about a month, when he returned to his former home.

The town was afterwards proved up by a board of trustees appointed by the secretary of the interior, under the provisions of the act of congress approved May 14, 1890, relating to townsites in Oklahoma. Both Hagar and Wikoff filed applications with said trustees for the lot in controversy. A hearing was had before the board and the lot awarded to Wikoff; from their decision Hagar appealed to the commissioner of the general land office, but subsequently dismissed his appeal and directed a deed to issue to Wikoff. The title was conveyed to Wikoff by the trustees and he still held the title at the time of the bringing of this action.

The plaintiff, Hagar, brings this action to enjoin the defendant, Wikoff, from disturbing his possession and to quiet title. Wikoff answers in several counts; he pleads a general denial; ownership of the property and refusal of the plaintiff to vacate; that plaintiff entered as tenant of defendant's grantor and has never surrendered; and also a cross bill alleging title in defendant, the adverse occupancy of plaintiff and praying for possession, damages and decree quieting his title. The reply is very voluminous and when stripped of its redundant and superfluous matter amounts to little more than a general denial. Trial was had by

the court; finding and judgment for defendant on his cross petition.    Plaintiff appeals.

*Geo. P. Uhl,* for plaintiff in error.

*Hunt & Workman,* for defendant in error.

The opinion of the court was delivered by

BURFORD, J.: The first contention of plaintiff in error is that the trial court erred in permitting the defendant to plead after default.    The court granted defendant leave to plead after a hearing upon his application, in which numerous affidavits were presented on each side.    This was purely a discretionary matter in the trial court, and unless it appears that the court has abused its discretion to the manifest injury of the party complaining the appellate court will not interfere.    We find nothing in this ruling to show any abuse in discretion.    It is not contended that the court erred in overruling plaintiff's motion for continuance on account of absent testimony.    Under our view of the law in this case the testimony was not material and there was no error in overruling the motion.    In any event an affidavit for continuance of a cause on account of absent testimony should set out the facts expected to be proved with such definiteness and certainty that the adverse party may, if he desires, admit that the witnesses would so testify if present, and thus avoid the delay of a continuance.    The application in this case would not stand the test of such a rule.

The plaintiff in this case is in no position to ask relief from a court of equity.    The pleadings and evidence show that at the time he went into possession of the lot in dispute, that there was a building on the lot, belonging to another claimant, and that he went into possession under a contract of rental, which his wife had made, and that he lived with her in the house, as one of the family, while she was paying the

rent, and that he sought by a trick and undue advantage to convert the possession thus acquired into a right of occupancy under the townsite laws, and to defeat the title of the person under whom he was occupying. Equity will not aid a person who can not show clean hands and a right based upon acts that good conscience will approve.

There is no better settled principle of law than that a tenant is estopped from disputing the title of his landlord.

The supreme court of the United States in *Willison vs. Watkins*, 3 Pet. 43, said:

"It is an undoubted principle of the law fully recognized by this court that a tenant cannot dispute the title of his landlord either by setting up a title in himself or a third person during the existence of the lease ·or tenancy. The principle of estoppel applies to the relation between them and operates in its full force to prevent a tenant from violating that contract by which he obtained and holds possession. He cannot change the character of the tenure by his own acts, merely, so as to enable himself to hold against his landlord who reposes under the security of the tenancy, believing the possession of the tenant to be his own, held his title and ready to be surrendered by its termination by the lapse of time or demand of possession. The same principle applies to mortgagor and mortgagee, trustee and *cestui que trust*, and generally to all cases where one man obtains possession of real estate belonging to another by a recognition of his title. On all these subjects the law is too well settled to require illustration or reasoning or admit of doubt."

Chief Justice Marshall in *Blight's Lessee, et al. vs. Rochester*, 7 Wheaton 535, speaking of the principle of estopple in this class of cases, said:

"This principle originates in the relation between lessor and lessee and so far as respects them is well established and ought to be maintained. The title of the lessee is in fact the title of the lessor. He comes

in by virtue of it, holds by virtue of it and rests upon it to maintain and justify his possession. He professes to have no independent right in himself and it is a part of the very essence of the contract under which he claims that the paramount ownership of the lessor shall be acknowledged during the continuance of the lease, and that possession shall be surrendered at its expiration. He cannot be allowed to controvert the title of the lessor without disparaging his own, and he cannot set up the title of another without violating that contract by which he obtained and holds possession and breaking that faith which he has pledged, and the obligation of which is still continuing and in full operation."

The estoppel does not depend on the validity of the landlord's title.  (*Goode vs. Gaines*, 145, U. S. 141).

A tenant in possession cannot even after the expiration of his lease deny his landlord's title, or set up a paramount oustanding title without first actually, openly and in good faith surrendering possession. (Bigelow on Estoppel 520).

And before one who obtains possession under a lease or by virtue of a tenancy can maintain an action to assert a title either in a court of law or equity, he must be out of possession. (*Peyton vs. Stith*, 5 Pet. 485).

A person in possession of land, who obtained his possession by renting from one, who claims the land leased, is estopped from asserting that the person from whom he leased or rented same was but a trustee of the land for him. (*Lucas vs. Brooks*, 18 Wallace 436).

The plaintiff seeks to avoid the principle of estoppel by claiming that his wife rented the lot in dispute without his consent, and that after he had occupied the lot and buildings with her for a period of about six months, he erected a tent and building on the lot and occupied his own building. This is not sufficient to excuse him from the operation of the rule of estoppel. It is conceded that his wife rented the property, took possession under her contract of rental and paid

the rent, and that he resided with her. The payment of rent establishes the relation of landlord and tenant, (Bigelow on Estoppel 520).

If a wife leases or rents real estate, and the husband does not at the time in some manner express his dissent or repudiate the transaction, the lease inures to his benefit and he becomes a tenant of the leasor. (*Lucas vs. Brooks*, 18 Wall. 436).

Hagar made no effort to repudiate his wife's contract of rental at the time, but went into possession with her under the contract of rental and appropriated the benefits of her contract. He never sought to avoid the wife's contract until after they had been in possession for some time, paying rent, and he conceived the idea of acquiring title to the lot by reason of his occupancy.

Having gone into possession of the lot under the contract to pay rent, and having actually acknowledged an interest in the property in favor of another by the payment of rent, he can not be heard to say that he occupied the lot for himself, unless he had openly and in good faith surrendered possession to the person from whom he obtained possession. His occupancy was the occupancy of the person from whom he procured possession. What improvements he made thereon in the absence of any agreement became the improvements of his landlord, and all the time he was occupying the lot his landlord was in actual occupancy through him, and the policy of the law, good conscience and morals, will not permit him to say that it was his occupancy. If he desired to assert a claim to the lot before the townsite board, he should have in good faith vacated the lot, notified his landlord or the person who gave him permission to occupy, and made his entry upon the lot as an adverse claimant.

There is no principle of law or in equity that will now

permit him to assert a title to the lot in question. It is contended by plaintiff that the pleadings do not disclose the qualifications of Wikoff or his grantors to take and hold public land in Oklahoma. This question was settled by the townsite board when they awarded the title to Wikoff. Before the board could award him a deed it was necessary that they should find that he was qualified to acquire title, and this finding is conclusive until set aside for fraud, imposition or mistake, and cannot be questioned in this manner. The first settler, Berkey, acquired an interest in the lot by his settlement and occupancy. The erection of a building on the lot constituted him an occupant, and gave him such an interest as he might sell, assign or transfer, and so of the transfer from Stafford to Wikoff.

The supreme court of the United States has recognized this right and affirmed the principle that an occupant of a town lot under the townsite laws of the United States may transfer or convey his interest or right, and a non-resident may, by purchase from an occupant, acquire such a right to the occupancy as will entitle him to a judgment for a conveyance. (*Stringfellow vs. Cain*, 99 U. S., 615; *Hussey vs Smith*, 99 U. S., 20.)

Counsel for plaintiff in error cites a number of authorities supporting the principle that the act of congress creates the trust in favor of those who, at the time the entry was made, were occupants, or entitled to the occupancy. This is, evidently, the correct rule of law, but it cannot avail the plaintiff in error here, for the reason, as we have stated, that his occupancy inured to the benefit of his landlord, and was the occupancy of Wikoff.

Counsel for plaintiff seem to have proceeded upon the theory that, Stafford never having resided upon the townsite, he could acquire no interest therein.

This is not the law. The lands settled for townsite purposes are to be entered for the use and benefit of the occupants thereon. Occupancy may consist of either residence, personal occupancy or improvement. One who erects, or causes, at his expense, to be erected upon a town lot, a building for the purpose of trade and busiuess, or residence, is an occupant as contemplated by the act of congress approved May 14, 1890, although he has never resided in the town. This act was passed for the benefit of the occupants of townsites settled in Oklahoma, in order that they might procure title to the lots upon which they had made settlement, and not forfeit their settlement or their improvements.

The supreme court of the United States in *Rector vs. Gibbon*, 11 U. S. 276, 4 S. C. R. p. 605, in speaking of this same question, said :

"Parties succeeding by operation of law or by conveyance to the possession of such claimants or occupants, would succeed also to their rights. But lessees under a claimant or occupant holding the property for him and bound by their stipulation to surrender it on the termination of their lease, stand in no position to claim an adverse and paramount right of purchase. Their possession is in law his possession. The contract of lease implies not only a recognition of his title, but a promise to surrender the possession to him on the termination of the lease. They, therefore, while retaining possession, are estopped to deny his rights. (*Blight's, Lesse, vs. Rochester*, 7 Wheat. 534.) This rule extends to every person who enters under lessees with knowledge of the terms of the lease, whether by operation of law or by purchase and assignment. The lessees in this case, and those deriving their interest under them, could, therefore, claim nothing against the plaintiff by virtue either of their possession, for it is in law his possession, or, of their improvements, for they were in law his improvements, and entitled him to all the benefits they conferred, whether by pre-emption or otherwise. Whatever the lessees and those under them did by way of improve-

ment on the leased premises, inured to his benefit as absolutely and effectually as though done by himself."

It takes more than people to make a town; there must be business and residence houses, and there must business men and business, and one who invests his capital in the improvement of a town lot by constructing a building thereon is as much an occupant under the townsite laws of the United States as the one who puts up a tent and personally occupies it.

The plaintiff was in no position to seek the aid of a court of equity, having acquired his possession through his wife who was a tenant. He was violating a plain principle of law, when he attempted, while so in possession, to defeat the title of his landlord or his grantee. And those who seek a right by violating the law cannot secure the aid of equity, and hence he was not entitled to an injunction.

The judgment of the court was right and the pleadings would sustain the same without any proof.

The defendant has assigned cross errors based on the refusal of the court to permit him to prove the amount of his damages. The defendant made no motion for a new trial. If if was error it should have been presented to the trial court by motion for a new trial. The question is not before this court and will not be considered.

The judgment is in all things affirmed.

Dale, C. J., did not sit in this case, having presided below; all the other Justices concurring.