## AVEY et al. v. VAN VOORHIS et al.

No. 3630.   Opinion Filed April 17, 1914.

Rehearing Denied May 12, 1914.

(140 Pac. 615.)

1.  DEEDS—Fraud—Sufficiency of Evidence. In an action to cancel a deed on the ground that the same was secured by fraud and deception, the evidence offered to maintain the action, as set out in the opinion, was insufficient, and a demurrer thereto should have been sustained.

2.  ESTOPPEL—Reception of Benefits—Sale by Attorney in Fact. The son who, with full knowledge of all the facts, accepts his part of the proceeds of the sale of his father's real estate, sold and conveyed by an attorney in fact after the death of his father, and who retains the proceeds eleven years before commencing action to establish his claim to the property as an heir of his father, is, under section 1150, Rev. Laws 1910, estopped from asserting such claim, and from declaring the invalidity of the deed executed by the attorney in fact.

(Syllabus by Galbraith, C.)

*Error from Superior Court, Oklahoma County;
Edward D. Oldfield, Judge.*

Action by Mary Van Voorhis and others, heirs of William Bushman, deceased, and G. M. Young, deceased, against Newton Avey and others. Judgment for the Young heirs, and defendants bring error. Reversed and rendered.

*Wright & Blinn* and *Burwell, Crockett & Johnson,* for plaintiffs in error.

*Carlisle & Edwards* and *Horace Speed,* for defendants in error.

Opinion by GALBRAITH, C.  On the 19th day of January, 1910, the heirs of Wm. Bushman, deceased, instituted this action in the superior court of Oklahoma county to recover title and the possession of lot 15 in block 36, as shown by the original plat and survey of Oklahoma City. The petition was in the ordinary form of an action in ejectment, alleging title in the plaintiffs, and that the defendants were wrongfully withholding the possession from them. The prayer was for possession and damages.

The defendants E. C. Jones, U. S. Grant, Harry Woods, Peter Jacovitch, and Abe Levy answered by general denial, and admitted being in the lawful possession of the premises under Avey. The defendants Newton Avey and associates filed an answer and cross-petition, in which they denied all the allegations of the petition, except they admitted that they were in the possession of the lot, and had had the undisturbed possession thereof for eleven years prior thereto, and averring that they had collected the rents therefrom during that time. By way of cross-petition these defendants averred that they were the legal and equitable owners of the lot, and averred that the plaintiffs had no interest therein, and prayed that the plaintiffs take nothing, and that title to the lot be quieted in them. On March 28, 1910, the plaintiffs, by leave of court, filed a reply to the answer and cross-petition, in which there was a denial of the matters set out in the cross-petition, except it was admitted that Avey and his associates had been in possession of the lot for the time alleged, but

charging that such possession was wrongful, and further that
possession of the defendants was claimed under a tax deed dated
December 30, 1898, issued by the treasurer of Oklahoma county,
alleging that said deed was void, as appeared on its face, and set
out in detail the reason it was void, and alleged that prior to the
filing of suit they had tendered to the defendants the amount of
the taxes and penalty due against said property, and that such
tender had been refused. The prayer was for judgment as prayed
in the original petition and for cancellation of the tax deed, and
that title to the lot in controversy be quieted in the plaintiffs. A
general denial was filed by the defendants by way of a reply to
this reply and answer of the plaintiffs. On September 10, 1910,
the heirs of G. M. Young, deceased, made application to the court
to be made parties plaintiff to the action, setting out the claim
that they were the owners in fee of the lot in controversy. On
September 17, 1910, the court made an order permitting Chas.
L. Young, Edward A. Young, Byron F. Young, and Bertha V.
Von Syoc to be made parties plaintiff. The Youngs did not file
a formal petition after they were permitted to be made parties
plaintiff, but their application to be made parties, in which they
claimed to be the owners of the lot in controversy, seems to have
been treated as a petition. An answer was filed to it, which con-
sisted: First, of a general denial of the allegation in the applica-
tion made, except the allegation of the possession of the defend-
ants, which was admitted; and, second, it was alleged that since
the commencement of the suit the plaintiffs Chas. L. Young,
Byron F. Young, and Bertha V. Von Syoc had executed deeds
to Newton Avey for their respective interests in the lot in suit,
and for that reason these parties had no title, right, or claim to
the lot, and further pleaded that Edward A. Young had no right,
title, or interest in the lot in controversy, and, further, that at
the time of the execution of the quitclaim deeds the defendants
were in possession, and that the deeds were executed for the pur-
pose of waiving any rights that these parties executing the deeds
had in and to the lot in controversy, and further alleging that
Avey and his associates were the legal and equitable owners of
the lot in controversy, and had been for several years prior, and

then were and had been, in the quiet and peaceable possession thereof; that neither of the plaintiffs had any right, title, or interest of any kind or character in and to the said lot, and prayed that the plaintiffs take nothing by their action, and that the title to the lot be quieted in these defendants.

The Bushman heirs replied to this answer and cross-petition by a general denial. The plaintiff, Chas. L. Young, filed a separate reply, consisting of a general denial, and also alleged that the execution of the quitclaim deed, as set out in the answer and cross-petition, was procured by fraud and deceit, and it was for that reason void, and alleged, further, that as soon as he discovered the fraud that had been perpetrated upon him, he offered to return the money paid for such deed, and prayed for the possession of the lot in controversy, and for damages for withholding the possession, and asked that the quitclaim deed be surrendered up and canceled; that the court order the same released of record, and order the defendants to reconvey the property back to these plaintiffs. Byron F. Young filed a reply in practically the same form, and asked for the same relief. Bertha V. Von Syoc filed a reply in like form, and asked for like relief. Edward A. Young filed a separate reply, which was a general denial, and admitted that on the —— day of ——, 1898, he received from W. E. Von Syoc the sum of $27 as part of the estate of G. M. Young, deceased, and at that time he believed, and still believes, that the funds so received arose from the sale of some chattel property, and that if it should be found by this court that such sum was a part of the proceeds arising from the sale of W. E. Von Syoc to L. Overholser of lot 15, block 36, he tenders the amount into court, with legal interest for the use of the defendants, and he prayed likewise for possession of the lot in dispute and for damages and cancellation of the quitclaim deeds executed by his brothers and sister.

Upon the issues thus formed by these several pleadings the cause was tried to the court and a jury. At the close of the evidence the court, upon the motion of the plaintiffs, took the cause from the jury and directed a verdict for the Young heirs. In the verdict prepared under the direction of the court there was a

finding that the title to the lot in dispute was in the Young heirs, and the quitclaim deeds executed by them were ordered canceled, and judgment was given in favor of Newton Avey against the parties executing these deeds for the several sums paid therefor. The defendants presented a motion for new trial, which was overruled, and have appealed to this court.

It is difficult to determine from the pleadings in this case whether the action was of such an equitable character as to warrant the court in taking from the jury the consideration of the controverted questions of fact presented. The testimony was conflicting as to whether or not the quitclaim deeds involved were secured by fraud and misrepresentations. If it was a law action, the defendants had a right to have this question determined by the jury. The action when commenced was an ordinary action in ejectment. About this there can be no serious question. We are inclined to think that it maintained this character throughout the trial, and that the subsequent pleadings filed after the petition and answer, asking for equitable relief in the cancellation of the several instruments, were merely incidental to the main question in the case, namely, the title to lot 15, block 36. However, it is not necessary for us to determine this question, since it is practically immaterial in the view we have taken of other questions raised upon the record.

The lot in question was deeded to G. M. Young by the townsite trustees of Oklahoma City on the 25th day of October, 1890. Some time after that Young built a small house on the lot, and some years later removed from Oklahoma City to Iowa, leaving the lot in charge of a real estate man by the name of Davis. Subsequently L. Overholser & Co., a real estate and insurance firm at Oklahoma City, composed of L. Overholser and Newton Avey, bought out Davis' interest, and in that manner secured the rental agency of this Young lot. The house on the lot was occupied as a residence. When it was occupied at all, it rented at a rate ranging from $2 to $4 per month. It seems that Overholser and Avey collected rents on the lot and remitted to Young during a period extending over some two or three years. On June 28, 1895, G. M. Young executed a general power of attorney to his

son-in-law, W. E. Von Syoc, a resident of El Paso county, Colo., giving him full power to sell and dispose of his property, including the lot in controversy. After Overholser & Co. were notified of the giving of this power of attorney, they had considerable correspondence with the attorney in fact, and remitted some rents collected from this property to him. A number of letters passed between L. Overholser & Co. and Von Syoc, the attorney in fact, relative to the purchase of this lot. Finally, in February, 1898, Von Syoc wrote to Overholser & Co. that he would accept from them $150 for the lot. The evidence proves that this sum was full value for the lot at that time. The deed was prepared, leaving the name of the grantee blank, and forwarded to Von Syoc to execute. This deed was executed on the 26th day of February, 1898, by G. M. Young, by W. E. Von Syoc, his attorney in fact. After the deed was returned here Overholser & Co. inserted Wm. Bushman's name in it as grantee, and Bushman subsequently deeded the lot to Overholser, and Overholser conveyed a one-half interest therein to Newton Avey. When this deed from Von Syoc for the lot was received, Overholser deducted the amount of taxes against the property, amounting to some $70, and remitted the balance of the $150 to Von Syoc. Von Syoc divided this remaining part of the consideration for the lot into three parts, retaining one-third for his wife, who was a daughter of G. M. Young, sending one-third of the balance to her brothers, Edward A. Young and Byron F. Young. After this suit was filed by the Bushman heirs, and in September, 1910, notice was served to take depositions at Rockey Ford, Colo. The parties whose depositions were taken in pursuance of this notice were Mrs. Von Syoc, Edward A. Young, and Byron F. Young, three of the heirs of G. M. Young, deceased. At the taking of these depositions it developed that G. M. Young died in Colorado in the year 1896, some two years prior to the making of the deed by Von Syoc to Bushman, as his attorney in fact. It was after the taking of these depositions that the application was made by the Young heirs to be made parties plaintiff to this suit.

One of the assignments of error is that the trial court erred in overruling the defendants' demurrer to the plaintiffs' evi-

dence. At the close of the plaintiffs' testimony the defendants interposed separate demurrers to the evidence of each of the Young heirs. The principal ground of the demurrer urged against the evidence of Bertha Von Syoc, Clarence L. Young, and Byron F. Young was that they had each executed and delivered, for a valuable consideration, a quitclaim deed to Newton Avey, conveying or releasing all their interests in and to the lot in controversy, and that the evidence offered was insufficient to show that these deeds were secured by undue influence or fraud, and the ground of the demurrer as to Edward A. Young was that he was estopped to question the deed from Von Syoc to Bushman, for the reason that he had knowingly accepted and retained his part of the proceeds of the purchase money paid for the execution of that deed.

It is contended on behalf of the defendants in error that Overholser & Co. were agents of G. M. Young for the lot in dispute during his lifetime, and were the agents for his heirs after his death, and that, owing to the relations of trust and confidence that the law throws around this relationship, they could not purchase this property from Young, or from his heirs under the circumstances disclosed by the record. We have no controversy with the numerous authorities cited by counsel in their briefs in support of the doctrine of trust and confidence existing between principal and agent. Those decisions announce sound doctrine, one that has been applied in this court many times and in the courts of all civilized governments, but it is the application of that doctrine to the facts of this case that gives rise to a difference of opinion between the court and counsel. There are different kinds of agencies, and, of course, the extent of the trust relations existing between the principal and the agent depends in a large measure upon the character of the agency. There are different degrees of trust and confidence. There is a wide difference between an agent to merely collect rents and an agent who has authority to dispose of property, between the guardian of a minor or incompetent and a rental agent. There is no evidence to show that Overholser & Co. ever had authority to sell this property, or that it was ever listed with them for sale. Their

agency in this matter was of that limited character whereby they were empowered to secure tenants and collect rents; and, since the property was not rented all the time, and when rented did not bring over $4 a month, this agency did not imply a great degree of trust and confidence between the owners as principal and Overholser & Co. as agent. We do not find anything in the record that would forbid Overholser & Co. from purchasing the lot in controversy, either for themselves or for a client, from Young during his lifetime, or from his heirs after his death. The courts certainly look with favor upon a compromise and adjustment of lawsuits, and upon the settlement of claim before suit is commenced.

It is alleged that the quitclaim deed secured from Chas. L. Young, Byron F. Young, and Bertha Von Syoc was secured by Avey for the purpose of settling their claim to the lot in controversy, and that they each executed the deed in order to relinquish and settle any claim they might have to this lot. Now the evidence introduced by them in support of their claim that these deeds were secured by fraud and misrepresentation was, in brief, this: That Mrs. Von Syoc and Byron F. and Edward A. Young were residents of Colorado, and Chas. L. Young resided in Pasedena, Cal. When Judge Burwell, one of the attorneys for Avey, discovered that G. M. Young was dead at the time his attorney in fact, Von Syoc, executed the deed to Bushman, he advised his client, Avey, that it was desirable that he should obtain quitclaim deeds from the heirs of Young, and he was authorized to secure these deeds, and he immediately set about to do it. It cannot be said that there was anything improper about this. He met Mrs. Von Syoc, Byron F. and Edward A. Young, at Pueblo, Colo., by appointment, but before he conferred with them about their claim to this lot, he insisted that they should employ independent counsel, which they did. They secured a reputable and distinguished member of the bar of Pueblo, and then, with them and this lawyer, Judge Burwell took up the matter of the adjustment of their claim. The Youngs testified at the trial that Judge Burwell misrepresented their rights and their claims to this lot, and that they relied upon this misrepresentation and believed it, and were in-

duced thereby to execute this deed. In this they are flatly contradicted, and their story is so incredible that it is unworthy of belief. They are all adults and people of intelligence, and they knew that Judge Burwell represented Avey, their adversary. They also had independent counsel to advise, as well as the counsel they had employed to prosecute this suit at Oklahoma City. The negotiations of the first trip to Pueblo did not result in a deal. Some two weeks later Judge Burwell made another visit to Pueblo and conferred with the parties and their attorney, and two of them, Mrs. Von Syoc and Byron F. Young, executed a quitclaim deed to their interest in the lot for the consideration of $400 each. Prior to this date Judge Burwell had gone to Pasadena, Cal., to confer with Chas. L. Young. Young had secured independent counsel, and negotiated with him for a quitclaim deed for his interest in the lot, and received $1,200 for the same. We are convinced from an examination of the testimony that all of the parties executing these quitclaim deeds were properly advised as to their rights in the premises, and that they each voluntarily executed the deed for a valuable consideration, and after having the benefit of the advice of counsel and ample time for reflection and consultation, and the transaction on the part of Avey and his counsel was fair and honest and above board, and there is nothing in the evidence to warrant the court in finding that the deeds were secured by fraud, and that they should be canceled. For that reason the demurrer to the evidence of Mrs. Von Syoc, Byron F. Young and Chas. L. Young should have been sustained.

Edward A. Young was a resident of Colorado, and was present at the two conferences held at Pueblo between counsel for Avey and Mrs. Von Syoc and Byron F. Young and their attorney, but he refused to execute a quitclaim deed. It is now contended on his behalf that he owns a one-fourth interest in this lot as the heir of G. M. Young, deceased, since the deed to Bushman, executed by Von Syoc, was executed and delivered after the death of G. M. Young, which death revoked the power of attorney to Von Syoc; that the deed was void and conveyed no title to Bushman.

The demurrer to the evidence introduced on behalf of Edward A. Young raises the question of estoppel, and alleges that he cannot now be heard to assert that the deed from Von Syoc to Bushman was void for the reason that he knowingly received a part of the consideration paid for that deed by L. Overholser & Co. The rule of estoppel in cases of this kind is well established. The principle of estoppel as applied to varying conditions and states of fact is recognized by our own court in the following cases: *Hagar v. Wikoff,* 2 Okla. 580, 39 Pac. 281; *Barnes v. Lynch,* 9 Okla. 156, 59 Pac, 995; *Garrison v. Latham,* 23 Okla. 599, 103 Pac. 609; *Sapulpa v. Sapulpa Oil & Gas Co.,* 22 Okla. 347, 97 Pac. 1007; *Braddon v. McShea,* 26 Okla. 35, 107 Pac. 916; *Brusha v. Board of Education,* 41 Okla. 595, 139 Pac. 298. See, also, *Corner Stone Bank v. Rhodes,* 5 Ind. T. 206, 82 S. W. 739, 67 L. R. A. 812. The statutes of Oklahoma declare the rule that should be applied in the instant case. Section 1150, Rev. Laws 1910, reads as follows:

"Estoppel by Receiving Benefits. Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

We are convinced upon a careful consideration of the evidence that Edward A. Young knew when he received the money from Von Syoc that it was a part of the consideration for the sale of the lot in controversy, and he retained this money for eleven years before this action was filed. It is now too late for him to attempt to repudiate that deed. The rule of estoppel should apply to his claim in this instance, and in this view of the case the demurrer to his evidence should have been sustained also.

The record in this case is very voluminous. It is evident that all the parties introduced all of the available testimony in support of their respective claims, and, in view of the law as we have

declared it hereinabove. we think the case should be closed, and that the judgment appealed from should be reversed and vacated, and the court below directed to sustain the respective demurrers. to the evidence of the several Young heirs, and to enter judgment in favor of the plaintiffs in error, quieting the title to lot 15, block 36, in Oklahoma City in them, and for costs of this action.

We feel constrained to say, before closing this opinion, that serious charges were made in the pleadings filed on behalf of the Young heirs.against one of the counsel for Newton Avey, and that from the record these charges seem to be entirely unfounded and wholly unjustifiable. The conduct of the counsel in question, Judge B. F. Burwell, it seems to us, was most circumspect, honorable, and ethical throughout the entire transaction, and he should be and is entirely exonerated against all claims of wrongdoing or unprofessional conduct in this case.

By the Court:    It is so ordered.