Argued October 4, reversed November 14, 1916.

# TREADGOLD *v.* WILLARD.*

### (160 Pac. 803.)

**Judgment—Foundation—"Pleadings."**

1. Pleadings are the formal written allegations by the parties of their respective demands and defenses, and are employed to state the ultimate facts, which, when uncontroverted, or when established by evidence at the trial, afford the foundation upon which a judgment or decree must necessarily rest.

**Pleading—Supplying of Averment by Adverse Pleading.**

2. In an action for rent, where the averment of the complaint respecting the description of the premises was defective, but the answer set forth a copy of the lease, giving a complete description, such answer remedied the defective state of the complaint, since, if a responsive pleading supplies material averments omitted by an adverse party, the question of who so makes the indispensable averment is unimportant, though the order of pleading may be irregular.

**Appeal and Error—Harmless Error—Overruling Demurrer.**

3. In an action for rent, where defendant's answer remedied the defective averment of the complaint in respect to lack of proper description of the land, the action of the court in overruling demurrer to the complaint was harmless.

----

*As to the question of estoppel of subtenant to question original land-lord's title, see note in 7 L. R. A. (N. S.) 930.        REPORTER.

**Wharves—Estoppel to Deny Landlord's Title—Statute.**

4. Under Section 798, subdivision 5, L. O. L., providing that a tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation, the lessee of wharfage rights, by accepting the written agreement, was estopped from controverting his landlord's title while retaining possession of the rights secured by the lease.

**Landlord and Tenant—Estoppel to Deny Landlord's Title—Termination by Surrender.**

5. A tenant's estoppel to deny his landlord's title ceases when he surrenders to the landlord possession of the demised premises.

**Landlord and Tenant—Estoppel to Deny Landlord's Title—Termination—Character of Surrender.**

6. A tenant's relinquishment of possession of the demised premises to the landlord, which will terminate his estoppel to deny the landlord's title, must be complete, open and made in good faith.

**Wharves—Lease—Realty Subject to Demise.**

7. A wharf resting on piles driven into mud-flats was a part of the realty, which could be held under lease; so that taking possession of any part thereof under an agreement of lease created the relation of landlord and tenant.

**Landlord and Tenant—Liability for Rent—Escape from.**

8. A tenant who enters into possession of demised premises pursuant to the terms of the lease can escape liability for rent thereunder only by being evicted by the holder of the paramount title or by compulsory attornment to him, or, when notified of the assertion of such superior right, by surrendering possession to his landlord.

**Appeal and Error—Injunction—Violation Pending Appeal—Prosecution for Contempt.**

9. Where a corporation was enjoined from intermeddling with wharf property, the taking of an appeal from the decree, and the giving of supersedeas bond did not render it immune, while the appeal was pending, from prosecution for contempt for a violation of the injunction.

**Wharves—Lease of Wharfage Rights—Occupation.**

10. Where the lessee of wharfage rights, when notified that his landlord's title was in litigation, tied the raft on which he unloaded passengers and freight from his steamboat to another wharf, but such raft constantly rested against the leased wharf, to which it was attached by a gang-plank over which the passengers and freight were landed, such lessee took possession of and occupied the leased wharfage rights.

**Trial—Direction of Verdict—Particular Finding of Fact.**

11. When a cause is finally submitted, if it appears from the evidence received that one of the parties is entitled, as a matter of law, to a particular finding of fact, it is incumbent on the court, when so requested, to direct a verdict to that effect.

From Coos: JOHN S. COKE, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE
MOORE.

This is an action by G. T. Treadgold against Frank
E. Willard to recover money.   The complaint charges
that at all the times stated therein the Walker Ware-
house Company was and is a corporation; that it on
May 6, 1913, entered into an agreement with the de-
fendant whereby, in consideration of his promise to
pay $10 a month in advance, the corporation permitted
him to use and leased to him "certain valuable prop-
erty," of which he then took possession, and continued
to use for eight months; that on December 31, 1913,
there was due under the agreement $70 from him to
the corporation when it for a valuable consideration
assigned the account to the plaintiff, who ever since
has been the owner thereof; and that the defendant has
refused to pay any part of the money so due.

The amended answer admits the existence of the cor-
poration, and that the defendant entered into a written
contract with it, setting forth a copy thereof.   It ap-
pears therefrom that the corporation leased to the de-
fendant "from month to month all the wharfage rights
belonging to the land lying in front of lot 2 in block 3
of Woodland Addition to Bandon, Coos County,
Oregon, at and for the agreed price of $10 per month,
to be paid each month in advance."   The writing also
stipulated that either party might terminate the agree-
ment by giving the other party 30 days' notice of an
intention to do so.   The remaining averments of the
complaint are denied.   For a further defense the an-
swer sets forth a copy of the decree rendered by the
Circuit Court of Coos County, Oregon, in the case of
Chris Rasmussen against the Walker Warehouse Com-

pany, and alleges that by virtue of such determination
the corporation had no wharfage or other rights which
it undertook to lease, and by reason thereof could not
enter into a valid agreement in respect thereto; that
such wharfage rights were never owned by nor in pos-
session of the corporation; that the defendant never
became its tenant, and the pretended lease was with-
out consideration; that about May 8, 1913, the defend-
ant was advised of the decree by Rasmussen, who for-
bade him from interfering with such wharfage rights,
and informed him that, if he intermeddled therewith,
a suit would be instituted against him, whereupon the
defendant notified the corporation thereof.

The reply denied the allegations of new matter in the
answer, and averred that at the time the written agree-
ment was signed the defendant knew the wharfage
rights were in litigation, and on account thereof cove-
nanted in the lease that upon its termination he would
surrender possession of the premises peaceably; that
an appeal from the decree specified was taken by the
corporation, which thereupon entered into an agree-
ment with Rasmussen whereby it was stipulated that
pending a review of the cause the appellant's posses-
sion of the demised premises should not be disturbed;
that upon an affirmance of the decree peaceable pos-
session of the premises so leased was surrendered
to that respondent, who then released the corporation
from all liability, including the payment of wharfage;
that Rasmussen never evicted Willard, nor did the
latter attorn to him or any other person; and that in
the eight months during which the defendant was in
possession of the wharfage rights he recognized the
corporation as his landlord, and expressly promised
to pay to it the installments of rent as they severally
matured.

Based on these issues, the cause was tried, resulting in a verdict and judgment for the defendant, and the plaintiff appeals.                              REVERSED.

For appellant there was a brief over the names of *Mr. G. T. Treadgold, Mr. C. R. Barrow, Messrs. Chatburn & Gardner* and *Mr. George C. Guthrie,* with an oral argument by *Mr. Treadgold.*

For respondent there was a brief and an oral argument by *Mr. William C. Chase.*

Opinion by MR. CHIEF JUSTICE MOORE.

It is maintained that an error was committed in denying a request to direct a verdict for the plaintiff on the ground that no testimony had been received tending to support the averments of the answer. It is insisted by defendant's counsel, however, that since the complaint did not particularly describe the premises alleged to have been leased, the primary pleading did not state facts sufficient to constitute a cause of action, which defect was not waived or remedied by answering over after a demurrer to the complaint interposed on that ground was overruled, and, this being so, no error can be predicated upon any action of the court occurring at the trial.

1, 2. Considering these questions in the inverse order, we find a text-writer saying:

"The declaration or complaint in an action for arrears of rent should allege a lease of described premises for a given term at a certain rent which defendant promised to pay and which has become due and remains unpaid": 24 Cyc. 1210.

See, also, *Kiernan* v. *Terry,* 26 Or. 494 (38 Pac. 671).

Pleadings are the formal written allegations by the parties of their respective demands and defenses, and are employed to state the ultimate facts which, when uncontroverted or when established by evidence at the trial of a cause, afford the foundation upon which a judgment or decree must necessarily rest. If a responsive pleading supplies material averments that have been omitted by an adverse party, so that the essential facts are thus set forth with sufficient particularity to uphold a judgment or decree based thereon, the question of who so makes the indispensable averment is unimportant, though the order of pleading may be irregular. Thus in 31 Cyc. 714, it is said:

"If a necessary allegation is omitted from a pleading, and the missing allegation is either alleged or admitted by the pleading of the adverse party the defect is cured."

So, too, in *Dice* v. *McCauley,* 25 Or. 471 (36 Pac. 530), in referring to an ambiguity in the delineation of a border to real property, set forth in an initiatory pleading, Mr. Justice BEAN observes:

"The only uncertainty in the description contained in the complaint is the north boundary, and that is obviated by the answer."

To the effect that omitted averments may be supplied by the allegations of an adverse party, see, also, *Turner* v. *Corbett,* 9 Or. 79; *Ferrera* v. *Parke,* 19 Or. 141 (23 Pac. 883); *State ex rel.* v. *Downing,* 40 Or. 309 (58 Pac. 863, 66 Pac. 917); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Hornefius* v. *Wilkinson,* 51 Or. 45 (93 Pac. 474).

3. The answer herein admits the defendant entered into an agreement with the Walker Warehouse Company, and sets forth a copy of the lease which gives a

complete description of the demised premises. The defendant's pleading therefore remedies the defective averment of the complaint in respect to the lack of proper description of the land, and renders harmless the action of the court in overruling the demurrer.

Reviewing the refusal to direct a verdict for the plaintiff, the testimony shows that the Walker Warehouse Company, a corporation, claiming to be the owner of the tide-land in front of and abutting upon the north end of the lot described in the lease, built on such shoals a wharf the outer or north line of which extended to navigable water in the Coquille River. Chris Rasmussen, the owner of such lot, commenced a suit against the corporation to quiet his title to the premises, alleging in his complaint that the tide-land abutting thereon was a part thereof, and on November 16, 1912, he secured a decree enjoining those defendants and all persons claiming or to claim by, through, or under them, or either of them, from driving any piles between the north line of such lot and the ship channel in that river, and also restraining any interference with that plaintiff's rights or privileges in or to the tide-land, from which decree those defendants appealed. The corporation thereafter, and on May 6, 1913, leased to Willard the premises so described for the use of which he paid the first installment of rent in advance. The defendant made a small log raft, which, floating with the tides, rested against the north line of piling of the wharf, though the raft was fastened to a wharf immediately east of the one mentioned. The latter wharf and a warehouse thereon were also built by the corporation in front of and abutting upon lot 1 in block 3 of Woodland Addition to Bandon, which real property was owned by Mr. Kronenberg. From the raft to the west wharf the

defendant placed an incline, or gang-plank, over which passengers went and freight was carried to and from Willard's steamboat, and such means was used by him for that purpose eight months, and until the decree appealed from in the suit referred to was affirmed: *Rasmussen* v. *Walker Warehouse Co.,* 68 Or. 316 (136 Pac. 661). Thereupon the defendant herein was notified by the corporation to surrender possession of the leased premises. For seven months he never paid any rent and refused to make any remuneration on account thereof, whereupon the corporation assigned the claim to the plaintiff herein, who instituted this action to recover the remainder alleged to be due.

G. T. Treadgold testified that on May 6, 1913, when the lease was made, the Walker Warehouse Company was, and ever since the year 1911 had been, in possession of the wharf and the wharfage right in front of lots 1 and 2 in block 3 in the addition specified; that in the eight months during which the defendant occupied the demised premises pursuant to the terms of the written agreement he never denied his liability to the corporation or offered to surrender to it the possession of the property.

Chris Rasmussen, the party who secured the decree against the Walker Warehouse Company, testified that about May 6, 1913, the defendant herein applied to him for permission to use the wharfage right in front of lot 2, and was informed by the witness that the property was in litigation, and until a final decree was rendered nothing could be done by him in the matter. On cross-examination Mr. Rasmussen stated he did not tell the defendant he could not use the property, nor did the witness object to the steamboat being tied by Willard at that place.

The defendant testified that after making the agreement with the corporation he learned an injunction had been issued, whereupon he notified the agent of the Walker Warehouse Company of what he had been informed, and thereupon obtained from the agent of Mr. Kronenberg permission to tie his log raft to the east wharf; that the witness never took possession of any property under the terms of the written lease, and that he had never been evicted by Rasmussen.

4–8. Notwithstanding the sworn statements of this witness, which declarations seem to voice his opinion of the law governing his rights, the physical fact remains that for eight months he occupied the demised premises. By accepting the written agreement he is estopped from controverting his landlord's title while he retained possession of the wharfage rights which he secured by the lease: Section 798, subd. 5, L. O. L.; *Jones* v. *Dove*, 7 Or. 467; *Rouse* v. *Riverton Coal Co.*, 71 Or. 154 (142 Pac. 343). The estoppel ceases, however, when the tenant surrenders to the landlord possession of the demised premises: *Bertram* v. *Cook*, 44 Mich. 396 (6 N. W. 868). Such relinquishment must be complete, open and made in good faith, nothing short of which will suffice: *Hagar* v. *Wikoff*, 2 Okl. 580 (39 Pac. 281); *Shy* v. *Brockhause*, 7 Okl. 35 (54 Pac. 306). The west wharf leased by the corporation in this instance rested upon piles driven into the mud-flats, and hence the structure was a part of the realty which could be held in subordination to some superior. If, therefore, the defendant took possession under the terms of the agreement of any part of the west wharf, the relation of landlord and tenant was created between the parties: *Beck* v. *Grain Co.*, 131 Iowa, 62, 64 (107 N. W. 1032, 1033, 7 L. R. A. (N. S.) 930). In deciding that case Mr. Justice LADD says:

"The landlord may not have any interest in the title to the demised premises, but whether he has or not cannot be questioned by the tenant before the expiration of his lease, and whilst in possession under it, unless based upon some distinct and independent claim to the land."

A tenant who enters into possession of demised premises pursuant to the terms of a lease can escape liability for rent thereunder only by being evicted by the holder of the paramount title or by compulsory attornment to him, or, when notified of the assertion of such superior right, by surrendering possession to his landlord: Jones, Land. & Ten., § 701.   This author in that section of his work remarks:

"For a tenant who admits the execution of a lease to defend an action for rent, it is necessary for him to allege either that he had not entered under the lease, or that he had been evicted by a paramount title or that possession had been surrendered."

In *George* v. *Putney,* 4 Cush. (Mass.) 351, 354 (50 Am. Dec. 788), Mr. Justice WILDE, speaking for the court, says:

"In an action for the recovery of rent reserved in a lease by the lessor against the lessee, the defendant is not allowed to plead *nil habuit in tenementis;* for he is estopped to deny the lessor's title, by whose permission he has entered upon and occupied the premises.   And this is not a mere technical rule, but is conformable to the contract between the parties; for so long as the lessee is not disturbed in his occupation he is bound by the contract to pay the rent, whether the lessor's title be defective or not.   But it is equally well settled that, if the lessee is disturbed in his occupation by a party having a title paramount to that of his lessor, so that he cannot legally continue his occupation under the lessor, without rendering himself liable as a trespasser to the other party, he may yield the possession, and take a new lease under him, or he

may abandon the possession; and in either case he will thereafter not be liable to pay rent to the original lessor. Such an entry and disturbance are equivalent to an ouster.''

See, also, the notes to the case of *Hodges* v. *Waters,* 4 Ann. Cas. 106.

9, 10. The plaintiff's testimony shows that the Walker Warehouse Company was in the actual possession of the wharf in front of and abutting upon lot 2 in block 3 of Woodland Addition to Bandon, Oregon, on May 6, 1913, when the lease was executed, notwithstanding the corporation had been perpetually enjoined from intermeddling with the property. The taking of an appeal from that decree and the giving of a supersedeas bond did not render the corporation immune, while the appeal was pending, from prosecution for contempt for a violation of the injunction: 1 Joyce, Inj., § 283. No testimony was offered tending to substantiate or to deny the averment in the reply that the Walker Warehouse Company by agreement with Rasmussen was permitted to retain possession of the property leased to the defendant until final determination of the cause on appeal. In the absence of such proof, however, it is certain that Willard was never evicted, nor did he attorn to Rasmussen; neither did the latter object to the defendant's possession. Willard testified that he did not take possession of the wharfage rights so attempted to be leased, but fastened his log raft to the east wharf in front of and abutting upon Mr. Kronenberg's lot. This raft constantly lodged against the outer row of piling in the west wharf; such float evidently being kept in that position by the current in the Coquille River. It will be remembered that from the raft an inclined plank gangway extended to the west wharf whereby passengers

were permitted to pass, and freight was conducted to and from the defendant's steamboat to and over such wharf for the entire eight months during which Willard occupied the premises. Notwithstanding the defendant's testimony that he did not take possession of the wharfage rights under the terms of the lease, his sworn statement in this particular was evidently nothing more than a conclusion of law based upon the assumption that because the raft was fastened to the east wharf, and not to the west wharf, he did not occupy the latter. The physical fact that the raft constantly rested against the west wharf to which it was attached by the gang-plank overcomes his testimony, and conclusively shows he took possession of and occupied the wharfage rights so leased to him during the entire time specified.

11. When a cause is finally submitted, if it appears from the evidence received that one of the parties is entitled, as a matter of law, to a particular finding of fact, it is incumbent upon the court when so requested to direct a verdict to that effect: *Merrill* v. *Missouri Bridge Co.*, 69 Or. 588, 592 (140 Pac. 439, 441). In deciding that case Mr. Justice RAMSEY says:

"When there is no conflict in the evidence, and no dispute as to the material facts of the case, the question for decision is for the court, and under such a state of facts the court should direct the jury as to the particular verdict that they should find in accordance with the undisputed evidence."

See, also, the cases there cited in support of the language used.

A request having been made at the proper time for a directed verdict for the plaintiff, to which command the evidence shows he was unquestionably entitled, as a matter of law, an error was committed in denying such solicitation.

The judgment is therefore reversed, and the plaintiff will be awarded a recovery of the sum demanded in the complaint.    REVERSED.    JUDGMENT RENDERED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.