[ Filed April 16, 1890. ]

A. FERRERA, APPELLANT, *v.* L. C. PARKE AND B. T.
LACY, RESPONDENTS.

JUDGMENT OF NON-SUIT ON DEFENDANT'S MOTION—WHEN IMPROPER.—Under section
246, Hill's Code, a judgment of non-suit on the defendant's motion is improper, if
the defendant was required to produce evidence to meet the plaintiff's case.

DEFECTIVE PLEADING—"EXPRESS AIDER."—A pleading which is defective by reason
of the omission of some material allegation, may be aided by the pleading of the
adverse party.  If the omitted allegation be supplied by the adverse pleading, it is
the same as if it were inserted in the party's own pleading.

Per LORD, J., dissenting.

CONVERSION DEFINED.—Conversion is based on the idea of an assumption by the
defendant of a right of property, or a right of dominion over the thing converted,
which casts upon him all the risks of an owner, and consequently it is not every
wrongful detention of property that amounts to conversion.

WHEN DEMAND AND REFUSAL NOT SUFFICIENT EVIDENCE OF CONVERSION.—A demand
and refusal will not be sufficient evidence of conversion when it appears that the
property demanded was not at the time in the possession or under the control of
the defendant on whom the demand was made, but that it had been previously
mislaid or was lost.

APPEAL from Multnomah county: E. D. SHATTUCK, judge.

This is an action to recover damages for the conversion
of certain chattels.  It is alleged in the complaint that on
the fifteenth day of February, 1887, the defendants were
partners doing business at the city of Portland, and that on
that day the plaintiff was the owner and in the possession
of certain personal property, to wit:  "A plan and drawing
of a maccaroni and feroni paste factory, and of the
machinery, utensils and apparatus to be used in said fac-
tory in the manufacture of maccaroni and feroni, made
and prepared for the plaintiff by E. Gravero and Company
in Foce, near Geneva, Italy, of the value of $2,500, and

'that the defendants thereafter converted the same to their own use, to plaintiff's damage in the sum of $2,500; that before the commencement of this action, at divers times the plaintiff demanded said property of the defendants, and that they refused and still refuse to return or deliver the same to the plaintiffs. The complaint further alleges that he had expended $500 in preparations to run and operate said maccaroni and feroni paste factory and that he was unable to begin or conduct said business by reason of said wrongful conversion, and demands judgment for $3,000 damages.

The answer denies the material allegations of the complaint, and then alleges, as a further defense, that in the year 1887 the defendants were engaged in a machinery business in the city of Portland, Oregon, and on or about the ―― day of January in said year the plaintiff delivered to the defendants a plan and drawing of certain structures and machinery for the purpose of having the defendants procure for him certain machinery to comport with said plan and drawing; that while said plan and drawing were in the possession of the defendants for said purpose it became accidentally lost and defendants have since been unable to find the same. The answer then expressly admits that plaintiff demanded a return of said property and that defendants failed to return it, but that they say the demand was made after its loss. The reply denies the new matter in the answer except the delivery of said property to the defendants and the purpose for which it was delivered.

All the evidence is in the record. The plaintiff's evidence tended to prove that he delivered said property to the defendants substantially for the purpose specified in defendants' separate answer and that they were to return the same to him in ten days with their estimates; that the plaintiff continued to visit the house almost daily for nearly a year, and on many of those occasions he asked to have his plans returned to him. Finally one of the defendants told him that it was too bad, but that he had seen the same

in San Francisco, that he had been expecting to have it returned to the plaintiff, but that the same could not be found any more.   The plaintiff's evidence further tended to prove the value of said property.   The plaintiff further gave evidence tending to prove that the defendant sent said plans and specifications to their house in San Francisco to get a bid there as to the cost of doing the work.

The plaintiff having rested his case, the defendants introduced evidence tending to support their defense And then on their motion, the plaintiff was non-suited from which judgment this appeal is taken.

*C. H. Carey*, for Appellant.

*L. B. Cox*, for Respondent.

STRAHAN, J., delivered the opinion of the court.

The journal entry disposing of this cause in the court below recites that after the plaintiff had introduced his evidence in chief, and the defendants their evidence in chief, and the plaintiff his evidence in rebuttal, and the plaintiff having announced that he had no more evidence to offer, the defendants filed their written motion for judgment of non-suit, which was duly argued and submitted to the court, and by the court sustained, and then follows the usual judgment of non-suit which awards costs to the defendants.   The practice on this subject in this State is regulated by section 246, Hill's Code, which pro vides:

"A judgment of non-suit may be given against the plaintiff as provided in this title—   *   *   *   3. On motion of the defendant, when the action is called for trial, and the plaintiff fails to appear, or when after the trial has begun, and before the final submission of the cause, the plaintiff abandons it, or when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury."

Under this section of the Code the test is, whether or not the *plaintiff's* evidence tends to prove a cause sufficient to be submitted to a jury; and in passing on this question

the evidence submitted by the defendant, if any, cannot be considered for any purpose, for the reason that if it is necessary for the defendant to meet the plaintiff's case by evidence, then the case becomes one for the jury and could not be withdrawn from them in this summary manner. This view has been steadily maintained by this court in every case in which the question has arisen. In *Grant* v. *Baker*, 12 Or. 329, this court said: "To authorize the court to non-suit a plaintiff, the latter must fail to prove a cause sufficient to be submitted to a jury It must be such a case, that if the jury were to find a verdict for the plaintiff, the court would be required to set it aside for the want of evidence to support it. Civil Code, §§ 243, 244. It would have to be a case where there was a total failure of proof of some material allegation of the complaint." * * * So in *Salmon* v. *Olds*, 9 Or. 488, it was held that a defendant was not entitled to a non-suit, where, upon the pleadings and evidence introduced, a *prima facie* case has been made out against him.

So also in *Tippin* v. *Ward*, 5 Or. 454. it was held that a case should be submitted to the jury, unless there is an entire lack of evidence tending to maintain the issues on the part of the plaintiff; or unless upon the whole case made by the plaintiff himself it appears beyond doubt that the plaintiff has no right to recover; and the same principle was applied in *Southwell v. Beezley*, 5 Or. 459.

*Prima facie* the plaintiff made a case sufficient to be submitted to the jury. He showed the delivery of his property to the defendants for a particular purpose, gave testimony tending to prove its value, a demand on the defendants for its return, and their failure to return it. The jury had the right to pass on this evidence and to say under proper instructions of the court whether or not the plaintiff was entitled to a verdict. He was, unless the effect of this evidence was countervailed in some way by the defendants, and they presented another question proper for the jury to consider. The defendants set up that the property was lost while it was in their custody. Whether the

defendants had the right to send said property to San Francisco, whether it was lost, and if so was it under such circumstances as would exonerate the defendants from all liability, were all questions presented by the defendants, and they were for the jury under proper instructions by the court.

The learned counsel for the respondents, in support of the practice adopted in the court below, cites *Jansen* v. *Acker*, 23 Wend. 481; *Rudd* v. *Davis*, 3 Hill, 287 S. C. 7 Hill, 529; *People* v. *Cook*, 8 N. Y. 67;[1] *Somer* v. *Meeker*, 25 N. Y. 361; *Geary* v. *Simmons*, 39 Cal. 224. These authorities certainly do tend very strongly to support the respondents' contention, but they are at variance with what has already been settled in this court. The particular statutes under which these cases were decided, if any, were not brought to our notice; and if there were no statutes governing such practice, and those cases simply announced the general course of procedure in those States, the cases could not be accepted as controlling authority in this State.

4. Respondents' counsel has criticised the complaint, and doubtless it would have been more in harmony with the spirit of code pleading if it had alleged, amongst other things, the delivery of this property to the defendants, and the object of such delivery, etc., and the defendants' failure to return it; but the defendants have supplied that by an "express aider" in their answer. Bliss Code Pl. § 437. These allegations are contained in the defendants' answer, with the further matter designed to excuse such failure.

These are questions which should have been tried out before that jury, upon the merits of which we indicate no opinion at this time, but reverse the judgment and remand the cause for a new trial.

THAYER, C. J., concurring.—I concur with Judge Strahan in his conclusions in this case regarding the rule of non-suit of a plaintiff under the Code of this State, and as to the sufficiency of the evidence upon the part of the appel-

lant to establish *prima facie* cause of action against the
respondent herein for the conversion of the plans in
question. That said plans were delivered to the respondents
with the understanding that they should make and furnish
to the appellant an estimate of the cost of constructing the
machine which the plans represented, was conceded.
And the appellant testified that the respondents were to
give him an answer regarding the matter within about ten
days; but that he had never been able to obtain any such
estimate or recover back his plans, although he had called
for them and demanded their return a great number of
times. This of itself was sufficient to prove a conversion
of the plans, unless their detention was satisfactorily
accounted for. And it cannot reasonably be claimed that
the failure of the respondents to return the plans to the
appellant was excused by anything which appeared in the
testimony adduced by the latter. The appellant himself
testified that one of the respondents, Mr. Parke, told him
that he saw the plans in San Francisco, and that he had
been looking for them to send them back to appellant, but
had missed them, and that they could not be found. He,
however, testified in the same connection that when he
placed the plans in the hands of the respondents he did
not know that they had a house in San Francisco; that he
never authorized them to send the plans to San Francisco.

It also appeared from the testimony of Mr. Arthur,
manager of the respondent's business at Portland, when
on the stand as a witness for the appellant, that he had a
vague recollection that the plans were sent to San Fran-
cisco either by himself, Mr. Campbell, mechanical engineer
for the respondents, or were taken there by Mr. Parke;
and upon his cross-examination by respondents' counsel,
he testified that the object in sending the plans to San
Francisco was simply to get a bid from the home office at
what they could manufacture the machine for; that they
were endeavoring to secure a price; that the facilities for
manufacturing in San Francisco were much better than in
Portland; that he continued with respondents at their Port-

land house until about July 1, 1888, and that during the time he was there the respondents never undertook to make use of these plans or to appropriate them.

The main point in the case is, whether the appellant, by leaving the plans with the respondents at Portland, under the circumstances and for the purpose as testified to by him, authorized the respondents to send them to their home office in San Francisco, for the purpose claimed by them.   If the respondents were not so authorized then they were guilty of wrongful conversion of the property, as "any interference subversive of the right of the owner of personal property to enjoy and control it, is a conversion." *Budd* v. *Multnomah St. Ry. Co. et al.* 12 Or. 271.   It was not necessary that the respondents should have made use of the plans for their own benefit or appropriate them to their own personal advantage in order to constitute a conversion.   "The question is, did the respondents exercise dominion over them in exclusion or in defiance of the appellant's right."   Page 108, vol. 4, Am. & Eng. Ency. of L.   The gist of the conversion is the usurpation of the owner's right of property, and not the actual damages inflicted.   Note 1, page 113, *id.*   Nor is it necessary that the act should be wilful or intentional to render it a conversion.   "If a carrier by mistake delivers goods to the wrong person he is liable in trover."   Note 1, p. 112, vol. 4. *id.*   "Honesty of purpose is not a defense, and can in no measure shield the defendant from liability, except to prevent the giving of punitive damages."   Wait's Actions and Defenses, vol. 6, p. 164.   "And it makes no difference—in case of bailment—that the depositary did the act for the benefit of the depositor or that it really inured to his benefit.   He has no right to use the property for any purpose other than that for which it was left with him, upon any consideration or for any purpose, not even for its preservation."   Page 165, *id.*   "Any abuse of possession, lawfully acquired, or any breach of the trust under which it was placed in the defendant's hands, is an actionable conversion."   Page 166, *id.*

The appellant, if he testified truthfully,—and for the purposes of this appeal we must presume he did,—delivered the plans in question to the respondents for the specific purpose of obtaining from them certain information which they were to furnish in ten days. That certainly did not authorize the respondents to send the plans to San Francisco, when it would require at least double the specified time to send them there, have the estimate made, and have them returned. It was clearly the duty of the respondents, before sending the appellant's plans out of the State, and exposing them to loss, to have consulted with him in regard to the matter. He had evidently been to great trouble and expense in procuring the plans, and had the same right to exercise control over them that every one has to exercise dominion over that which belongs to him; which right he was deprived of when the plans were sent away without his consent or knowledge.

The respondents doubtless acted in good faith in the affair and intended no wrong, but they seem to have been careless and indifferent, at least they had no intelligent idea as to when, how or by whom the plans were sent away, though the appellant evidently was as constant in calling upon them in regard to the matter as any person having a favorite object in view would be likely to be. He probably became a source of annoyance to the managers of the respondents' business and received very little attention; but he had rights which they were bound to respect, and the workings of his Italian brain, if encouraged, might have produced results important to himself and the community. The respondents, at all events, should not have usurped his right to exercise dominion over his own property and exclude him from its control, which I think they did do, if they sent the plans to San Francisco without his consent. Whether they did so or not, and whether they acted prudently in the affair, are in my opinion proper questions to be submitted to a jury.

LORD, J., dissenting.—The evidence for the plaintiff only shows that the plans "were missed and could not be

found," or, at most, were mislaid or lost. It does not make out a *prima facie* case of conversion. The argument for the plaintiff proceeded upon the theory that the defendants in sending the plans to their San Francisco house, without the consent of the plaintiff, involved such a misuser of the plans as operated as a conversion of them in law. The contract did not provide where the estimate of costs was to be made, and the defendants sent these plans to their San Francisco house because of its superior facilities to ascertain the cost of constructing the works, which was the object of the contract; but the plaintiff did not know the defendants had a San Francisco house. It is not a case, upon its facts, where a bailee contracts to return the thing bailed at a fixed time, or where time was made the essence of the contract by stipulation, or where, from the nature of the property, or the character of the interest involved, time becomes an essential of the contract; nor where the thing bailed was contracted to be done or to be returned at a particular place or at a particular time without knowing that the defendants had a San Francisco house or any stipulation as to the time when the estimate was to be made, or when the plans were to be returned, other than the law infers were consistent with the purpose of the contract in estimating the cost. The plaintiff left the plans with the defendants for the purpose of ascertaining the cost of constructing a maccaroni factory; and to more thoroughly and satisfactorily effect that purpose, the defendants sent their plans to the San Francisco house to make such estimate and return the result to them, where, by some accident, the plans were mislaid or lost, or "were missed and could not be found" when demanded. Do these facts constitute conversion?

At the argument, it was said that if one person hires a horse to drive to one place and he voluntarily drives to another, it is a technical conversion of the horse; and so too it was claimed that when the defendants sent the plans to their San Francisco house to estimate the cost instead of making the estimate at their Portland house, or at least

without the consent of the plaintiff, that it amounted to a technical conversion of the plans, for which an action in trover could be maintained. This argument assumes more than the facts warrant, for the contract did not stipulate where the estimate of costs was to be made, whether at the Portland or San Francisco house, and could not involve the consent of the plaintiff to any change in that regard; but granting all this, there is no analogy between the cases, for the reason that the horse was bailed for one purpose, and it was used for another which constituted the conversion; while the plans were sent to the San Francisco house not for another but the identical purpose for which they were entrusted to the defendants, namely, to estimate the cost. The use made of the plans by the defendants was not of a different kind from that contemplated by the contract between the parties, but was done in pursuance of its purpose, and to effect the object of its bailment.

To constitute conversion, there must be some act of dominion exerted over one's property in denial of his right, or inconsistent with it. When one hires a horse to drive to one place and he drives it to another, he unlawfully intermeddles with the property of another for his own benefit and appropriates the horse to a use inconsistent with the terms of the bailment. In sending the plans to the San Francisco house, the defendants neither claimed nor exercised any right of property or dominion over them inconsistent with or in denial of the plaintiff's right as the lawful owner, but the conceded facts show that the plans were sent there to better effect the purpose of the bailment and without any intention of appropriating the property to their own use, or to destroy them, or to deprive the plaintiff of them as a rightful owner.

"Conversion," said Field, J., "is based upon the idea of an assumption by the defendant of a right of property, or a right of dominion over the thing converted, which casts upon him all the risks of an owner, and it is therefore not every wrongful intermeddling with, or wrongful

asportation, or wrongful detention of personal property, that amounts to a conversion. Acts which themselves imply an assertion of title or of a right of dominion over personal property, such as a sale, letting or destruction of it, amount to a conversion, even although the defendant may have honestly mistaken his rights; but acts which do not, in themselves, imply an assertion of title or a right of dominion over such property, will not sustain an action of trover, unless done with the intention to deprive the owner of it temporarily or permanently, or unless there has been a demand for the property and a neglect or refusal to deliver it, which are evidence of a conversion, because they are evidence that the defendants in *withholding it, claims the right to withhold it, which is a claim of a right of dominion over it."* *Spooner* v. *Manchester*, 133 Mass. 270.

What are the acts which, by any possible construction, can be considered as an assumption by the defendants of a right of property or dominion over the plans, casts upon them the risks of an owner? They claim no right to the plans, nor denied the right of the plaintiff to them; nor did they refuse, on demand, to deliver them, but, by the evidence of the plaintiff, the plans were mislaid and could not be found, or perhaps were lost. It is the withholding of the thing in his possession, or under his control, when demanded, that makes a *prima facie* case of conversion, but not when the evidence shows that at the time of the demand the thing or property was not under his control, or was mislaid or lost. In such case, the property is not withheld, because the defendant claims the right to withhold it, which is a claim of right of dominion over it, but because the property at the time is not under his control and capable of delivery.

The authorities are numerous to the point, that demand and refusal will not be sufficient evidence of conversion, when it appears that the property demanded was not at the time in the possession nor under the control of the defendant on whom the demand was made, but that it had

been previously lost or stolen or misdelivered. Said Appleton, C. J.: "In trover, a demand and refusal make out a *prima facie* case." But this is rebutted by proof that the property demanded was not at the time of the demand in the defendant's possession, nor under his control. *Boobier* v. *Boobier*, 39 Me. 407. Trover will not lie against a bailee when the goods have been lost or stolen. *Hawkins* v. *Hoffman*, 6 Hill, 586. There must be some wrongful act on the part of the defendant. A loss by mere non-feasance will not sustain this form of action. *Bowlin* v. *Nye*, 10 Cush. 416. Trover cannot be maintained against a common carrier for not delivering goods intrusted to him for transportation, if the goods are not in the carrier's possession at the time of the demand, and have been either lost or stolen. *Packard* v. *Getman*, 4 Wend. 613. Indeed, there seems an entire concurrence of authorities that in case of a loss of goods by a bailee, or of larceny from him, that he is not liable in trover. *Dearbourn* v. *National Bank*, 58 Me. 274.

In the case at bar the evidence for the plaintiff is specific to the point that the reason why the plans were not restored to him when demanded, was that they had been mislaid and could not be found, or were lost, and therefore not capable of delivery. The conduct of the defendant may have been negligent or careless, and for which they may be liable in some form of action, but in no legal sense does it constitute acts which imply an assertion of title, or a right of dominion over the property as will sustain an action of trover.

I think the plaintiff failed to establish a case sufficient to be submitted to the jury, and the court committed no error in granting the non-suit.