Argued March 25, affirmed June 3, rehearing denied July 22, 1924.

## K. J. LAUDERBACK AND L. R. LAUDERBACK *v.* MULTNOMAH COUNTY.

(226 Pac. 697.)

Highways—"County Court," as Used in Road Law, Includes Mult-
nomah County Board of Commissioners.

1. "County Court," as used in road law (Laws of 1917, c. 295,
§ 1 [§ 4536, Or. L.]), includes board of commissioners of Multnomah
County.

See 12 C. J., pp. 1228, 1234; 15 C. J., p. 979; 20 C. J., pp. 937,
1174; 22 C. J., pp. 168, 169; 29 C. J., pp. 403, 409, 412–414, 438; 29
Cyc., pp. 1113, 1122; 31 Cyc., p. 714.

**Highways—Notices of Resolution Establishing Road Need not be Posted on, or at Either End of, Proposed Road.**

2.   Under Laws of 1917, Chapter 295, Section 21 (§ 4556, Or. L.) it is unnecessary to post notices of county commissioners' resolution establishing road on, or at either end of, proposed road, or that board direct where notices shall be posted; posting of true copies at courthouse and in three public places in vicinity of road being sufficient.

**Pleading—Failure of Complaint to State Cause of Action may be Cured by Answer or Other Pleading.**

3.   Failure of complaint to state cause of action may be cured by answer or other pleading alleging or admitting omitted facts.

**Eminent Domain—Pleadings as to Posting Notices of Resolution Establishing Road Held to Show That County Court Never Acquired Jurisdiction.**

4.   Complaint, alleging failure to post copies of resolution establishing road, together with affidavit made part of answer describing posting of notices on fence and telephone posts on sides of, road intersected by proposed road, *held* to show that County Court never acquired jurisdiction to establish road, affidavit not showing conformity to statutory requirement (§ 4543, Or. L.) that notice be posted at three public places in vicinity of proposed road.

**Eminent Domain—Entry on Private Property Enjoined Until Right is Perfected by Full Compliance With Constitution and Laws.**

5.   Entry on private property under color of eminent domain power will be enjoined until right is perfected by full compliance with Constitution and laws as to compensation and proceedings, irrespective of irreparable injury or adequate legal remedy.

**Constitutional Law—County cannot Deprive Individuals of Land for Road Without Notice.**

6.   Under Constitution, Article I, Section 18, county cannot deprive individuals of their land for road against their will without due process of law, which includes notice and right to be heard, in order that they may enforce rights under Sections 4549, 4553, Or. L., to file petition for damages or appeal to Circuit Court.

**Highways—County Court Acquires Jurisdiction to Establish Highway by Resolution Only by Posting Notice in Four Public Places.**

7.   Under Laws of 1917, Chapter 295, Section 21, subdivisions "a," "c" (§ 4556, Or. L.), relative to establishment of road by resolution, read in connection with Section 8 (Section 4543) as to establishment on petition, County Court can acquire jurisdiction only on proof of posting notice of resolution in four public places, as therein described, statute contemplating owner's privilege of remonstrating and right to compensation for lands taken.

**Notice—To Conclude Party by Constructive Notice by Publication, Strict Compliance With Statute must Affirmatively Appear.**

8.   To conclude party by constructive notice by publication, strict compliance with statute is required, and every act necessary to

exercise of court's jurisdiction must affirmatively appear in mode prescribed by statute.

### Notice—Nature and Effect of "Notice" Stated.

9. Notice is information concerning fact actually communicated by authorized person, actually derived from proper source, or presumed by law to have been acquired, and must be distinguished from evidence of facts from which notice is inferred, but legal effect of either actual or constructive notice, when established, is same.

### Highways—Proceedings Subsequent to Lawful Resolution and Due Notice of Proceedings to Establish Road not Nullified by Mere Irregularities.

10. After County Court acquires jurisdiction to establish road by lawful resolution and gives due notice of proceedings, mere irregularities in subsequent proceedings will not nullify them.

### Evidence—Testimony That Witnesses Did not See Something They Probably Would have Seen, had It Occurred, may be Strong Evidence.

11. Generally, purely negative testimony is entitled to no weight; but testimony by witnesses that they did not see something they probably would have seen, had it occurred, may be strong evidence.

### Evidence—Negative Testimony That Witnesses Did not See Notice of Resolution Establishing Road, Held Material and of Probative Value.

12. Negative testimony of witnesses, who resided in immediate vicinity of proposed road, in establishment of which they were interested, and traveled along way where it was claimed that notices of County Court's resolution were posted, that they saw no notices and never learned of matter until construction was commenced, *held* material and of probative value in suit to enjoin further proceedings.

### Evidence—Demonstrative Evidence Best Possible.

13. Highest proof of which fact is susceptible is that which presents itself to senses of court or jury.

### Highways—Posting of Notice of Resolution Establishing Road Without Signatures of Commissioners, Held Insufficient.

14. Posting of copies of county commissioners' resolution establishing road, without commissioners' signatures thereon, *held* insufficient compliance with Laws of 1917, Chapter 295, Section 21 (§ 4556, Or. L.).

### Highways—Posting Notices for Location of Three and One-half Mile Road Sixty Feet Apart, Held Insufficient.

15. Laws of 1917, Chapter 295, Section 21 (§ 4556, Or. L.), as to posting notices of resolution establishing road in three public places in vicinity of proposed road, is not complied with by posting notices sixty feet apart for location of road three and one-half miles long.

Highways—Journal Entry Aiding Defective Proof of Posting Notices must be Based on Competent Evidence of Record.

16. Journal entry aiding proof of posting notices of resolution establishing road by insufficient affidavit must be based on competent evidence of record.

Courts—County Court is Court of Record and Speaks Through Its Journal.

17. County Court is court of record, and hence speaks through its journal.

Highways—Names of Commissioners Constituting County Court Held Essential to Sufficiency of Notice of Resolution Establishing Road.

18. Names of commissioners constituting County Court and signing recorded proceedings in establishment of road are essential to sufficiency of notice of resolution adopted by them.

Highways—Posting of Notice in Such Manner as to Cover Clerk's Attestation Held Insufficient.

19. Notice of resolution establishing road, posted in such manner that it covered clerk's attestation that it was certified copy of resolution adopted by board of county commissioners, *held* insufficient.

From Multnomah: T. E. J. DUFFY, Judge.

Department 2.

This is an appeal from a decree of the Circuit Court enjoining the defendant from further proceeding with the construction of a public highway over the land of plaintiffs.

The plaintiffs questioned the legality of the proceedings had by the board of county commissioners of Multnomah County, Oregon, in an attempt to lay out, establish and construct a county road under the provisions of Section 21 of Chapter 295, Laws of, 1917, codified as Section 4556, Or. L. Among other things, the complaint alleges an attempt by the board of county commissioners, by resolution, to institute proceedings to establish a certain county road, and sets forth the proceedings particularly with reference to the attempt of the board to acquire jurisdiction.

The complaint challenges the jurisdiction of the County Court to establish the road by reason of its failure to give notice thereof. It is alleged that the real property of plaintiffs consists of about 40 acres, and that a stream of water flows diagonally across the southwest corner thereof; that plaintiffs have constructed a building on the property and are engaged in the slaughtering business. The complaint further alleges:

"that at the present time county roads are located on two sides of the said premises of the plaintiffs, which roads are good and sufficient for the use of all persons in said vicinity";

that the construction by the defendant of the proposed road diagonally through their lands will damage them in a sum of not less than $3,000; that the defendant now is engaged in digging and tearing up a portion of plaintiff's lands, and unless restrained by the Circuit Court will continue unlawfully to dig up, tear down and destroy their property, to their damage in a sum of not less than $3,000.

Defendant filed a demurrer, which was overruled, and thereafter answered, admitting its entry upon the premises and its commencement of the work of highway construction, and for a separate answer and defense pleaded the establishment of the road, setting forth the proceedings had before the County Court, including the resolution by the board of county commissioners of Multnomah County, Oregon, in the matter of the location and establishment of the road in question. The copy set out in the answer purports to have been adopted by the "Board of County Commissioners of Multnomah County, Oregon, by Charles Rudeen, Chairman, by Rufus C. Holman, Commissioner, by ——, Commissioner."

Plaintiffs replied to the new matter. At the conclusion of the testimony the court made findings of fact and conclusions of law, and, because of the failure of jurisdiction by reason of absence of notice, adjudged that the defendant be "perpetually restrained and enjoined from further proceeding in the construction" of the road.

Defendant appeals, assigning error of the court in finding that plaintiffs had no legal notice of the proceedings to establish the highway, and in overruling defendant's demurrer.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. Samuel H. Pierce,* Deputy District Attorney, with an oral argument by *Mr. Pierce.*

For respondents there was a brief and oral argument by *Mr. J. F. Boothe.*

BROWN, J.—1. The term "County Court," as used in the road law, includes the "board of county commissioners" of Multnomah County: Section 1, Chap. 295, Laws 1917 (§ 4536, Or. L.). Hereafter, in this opinion, we will refer to that board as the "County Court."

The proposed road is about 3½ miles in length and affects the premises of at least thirty-two persons. Of this number, twenty-two were awarded damages by the board of viewers in the sum of $1, and two were awarded nothing. The plaintiffs are numbered among those who were awarded $1.

2. Defendant, in support of its demurrer, asserts that the plaintiffs' complaint failed to state a cause of suit.

Plaintiffs averred that the defendant failed to post

"true copies of the resolution of the said board of commissioners, certified to as such by the county clerk, at either end of said road, or in any conspic·uous place along said proposed road, or as directed by the county court. Neither did said board direct where such notices should be posted."

It was unnecessary that notices be posted at either end of the proposed road, or on that road, nor was it essential that the board direct where the notices should be posted. The law directs that advertisement be given by posting notices consisting of true copies of the resolution, in four places,—one at the place of holding County Court, and three in public places in the vicinity of the proposed road.

3. But at paragraph 9, the plaintiffs alleged total failure of the defendant to cause true copies of the resolution adopted by the county authorities to be posted at all, and, upon trial, offered proof in support of that allegation. Furthermore, the allegations of the answer aid the statement of the cause of suit alleged in the complaint.

"It is a general and well-established rule that the failure of a complaint to state a cause of action may be cured by an answer or other pleading in which the omitted facts are stated; for facts alleged by one party need not be pleaded by the other."   21 R. C. L. 492.

Again:

"If a necessary allegation is omitted from a pleading, and the missing allegation is either alleged or admitted by the pleading of the adverse party, the defect is cured."   31 Cyc., p. 714.

In the case of *Treadgold* v. *Willard,* 81 Or. 658 (160 Pac. 803), it was urged on behalf of the defendant that the complaint did not with sufficient particu-

larity describe the premises alleged to have been leased. A demurrer thereto was overruled. In that case, as here, the defendant answered. It was urged on appeal that the defect in the complaint was not waived or remedied by answering after demurrer, and this court, after quoting the above excerpt from Cyc., said:

"To the effect that omitted averments may be supplied by the allegations of an adverse party, see, also, *Turner* v. *Corbett,* 9 Or. 79; *Ferrera* v. *Parke,* 19 Or. 141 (23 Pac. 883); *State ex rel.* v. *Downing,* 40 Or. 309 (58 Pac. 863, 66 Pac. 917); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Hornefius* v. *Wilkinson,* 51 Or. 45 (93 Pac. 474)."

To like effect is *Siverson* v. *Clanton,* 88 Or. 261 (170 Pac. 933, 171 Pac. 1051).

4. Exhibit "B," which purports to be proof of posting of notice whereby jurisdiction was obtained to establish the proposed road, is made a part of the defendant's answer. The affidavit describes the posting of notices as follows:

"One of said notices I so posted on said day at the place of holding county court in said county, to wit: at a conspicuous place on the bulletin board in the county court house of said county and state; another of said notices I so posted on a fence on the south side of Powell Valley Road, where the proposed road intersects the Powell Valley Road. Another of said notices I so posted on a telephone pole on the east side of the Boring Road, where the proposed road intersects the Boring Road. Another of said notices I so posted on a telephone pole on the north side of the Powell Valley Road, where the proposed road intersects the Powell Valley Road."

This affidavit does not conform to the statutory requirement that notice shall be given "by advertisement, posted at the place of holding County Court,

and also at three public places in the vicinity of the proposed road to be located.'' Section 4543, Or. L.

Hence, the pleadings show that the County Court never acquired jurisdiction.

5, 6. The demurrer also averred that the Circuit Court had no jurisdiction of the cause.

Section 4549, Oregon Laws, relates to the filing of a petition for damages. It provides:

''Failure to file a petition for damages within the time herein allowed shall be a waiver of all rights thereto by every person interested therein, except minors or other persons under disability.''

Section 4553 provides:

''Any person whose lands are directly affected by such proceeding may, within twenty days after such report is adopted by the county court, appeal therefrom to the circuit court of said county.''

Because of the alleged absence of notice, the plaintiffs were deprived of the right to file a petition for damages or to appeal to the Circuit Court from the award made by the viewers and adopted by the court.

This suit was instituted prior to the construction of the proposed highway, and its commencement followed close upon the receipt of knowledge by plaintiffs that their property was sought for a public use.

''It is now almost universally held that an entry upon private property under color of the eminent domain power will be enjoined until the right to make such entry has been perfected by full compliance with the constitution and the law. If the just compensation has not been paid, or deposited as required by law, or if the proceedings under which the right to enter is claimed are invalid for any reason, an entry will be enjoined.'' 2 Lewis, Eminent Domain (2 ed.), § 631.

111 Or.—44

See, also, extensive list of authorities cited under note 1.

"It is most essential to the preservation of the rights of private property, to the protection of the citizen, and to the preservation of the best interests of the community, that all who are invested with the right of eminent domain, with the extraordinary power of depriving persons, natural or artificial, without their consent, of their property, and its possession and enjoyment, should be kept in the strict line of the authority with which they are clothed, and compelled to implicit obedience to the mandates of the constitution. A court of equity will intervene to keep them within the line of authority, and to compel obedience to the constitution, because of the necessity that they should be kept within control, and in subjection to the law. * * The owner of the land has a right to say that, unless they keep within the strict limits prescribed by law, they shall not disturb him in the possession and enjoyment of his property. The power is so capable of abuse, and those who are invested with it are often so prone to its arbitrary and oppressive exercise, that a court of equity, without inquiring whether there is irreparable injury, or injury not susceptible of adequate redress by legal remedies, will intervene for the protection of the owner." 5 Pomeroy's Equitable Remedies (2 ed.), § 1879.

In *Stafford* v. *Multnomah County D. Dist. No. 1,* 103 Or. 197 (204 Pac. 158), we sustained an injunction issued by the lower court restraining the defendant drainage district from interfering with plaintiff's possession of his land. The district was claiming that the land had been condemned for right of way. In that case we approved the following from 10 R. C. L., § 193, p. 228:

"When an illegal entry upon private land under color of eminent domain is undertaken or threatened,

it will be restrained by a court of equity without regard to the customary requirements of equitable jurisdiction. * * The equitable jurisdiction in such a case is based upon the attempted misuse of the sovereign power, delegated by the legislature, and upon the inequality of the parties by reason of the grant of a prerogative right to one of them."

The United States Supreme Court, in speaking through Mr. Chief Justice FULLER, said:

"Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy where the injury is destructive or of a continuous character, or irreparable in its nature; and the appropriation of private property to public use, under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded *ex debito justitiae.*" *Osborne* v. *Missouri Pac. Ry.*, 147 U. S. 248, 258 (37 L. Ed. 155, 13 Sup. Ct. Rep. 299, see, also, Rose's U. S. Notes).

See, also, *Christensen* v. *Lane County,* 90 Or. 401 (175 Pac. 845).

The defendant's demurrer is without merit.

The question here involved is one pertaining to the jurisdiction of the County Court to establish the road in question. No other point averred in the complaint is considered in this opinion.

It is fundamental that—

"Private property shall not be taken for public use * * without just compensation * * ." Section 18, Art. I, Or. Const.

Defendant could not lawfully deprive plaintiffs of their land against their will in the absence of due process of law, which includes notice and a right to be heard in order that they might defend and enforce their rights.

7. For the purpose of providing a procedure within the guaranty of the federal and state Constitutions, the legislature enacted by statute certain methods for the establishment of county roads. At Section 21 of Chapter 295, Laws of 1917 (§ 4556, Or. L.), we read, concerning the procedure attempted to be followed by the County Court in the instant case:

"Sec. 21. Establishment by Resolution. The county court of any county at any regular term may, by resolution, declare its intention to locate, establish, alter, widen, straighten, or change the direction of any road, and such notice shall thereupon be given as is provided for upon the filing of a petition for such purposes, and like proceedings shall be had by such county court as in the case of the filing of a petition before it, asking for such improvement, except as hereafter particularly specified:

" (a) The notices to be posted shall consist of true copies of the resolution of the county court, properly certified to as such by the county clerk, and the same shall be posted by the county roadmaster, or county surveyor, or a duly qualified deputy, as directed by the county court; * *

" (c) If any objections or remonstrances shall be presented or filed, the county court shall hear the same, and the county court shall have the power, in its discretion, for good and sufficient reasons, to overrule and deny the same * * ."

The foregoing provisions of law should be read in connection with Section 8 of Chapter 295, because like procedure is to be followed in the establishment of a road by resolution "as in the case of the filing of a petition before it."

It will be observed that jurisdiction is obtained by advertisement by posting notice and proof thereof.

"Sec. 8. Proof of Notice; Board of Viewers. When such petition shall be presented to the county

court for action, is (it) shall be accompanied by satisfactory proof that notice has been given by advertisement, posted at the place of holding county court and also at three public places in the vicinity of the proposed road to be located, * * thirty days previous to the presentation of said petition to the county court, notifying all persons concerned that such application will be made to said court at its next term. Upon presentation of the petition aforesaid, with satisfactory proof of notice, the county court shall, by order, direct the board of county road viewers, on a day named in said order, or on their failure to meet on said day, within ten days thereafter, * * to * * locate * * and assess the damages and file its report on or before the day specified in the order of said court * * .''

The law not only requires notice, but proof that notice has been given in four public places, before the ''County Court'' can acquire jurisdiction to establish a highway. Our statute contemplates that the owners of property shall have the privilege of exercising their free American right to remonstrate against the laying out of a highway, or, in the event of the establishment of the road, that they shall receive compensation for all lands taken from them for public use.

8. The law is well settled that—

''When it is sought to conclude a party by constructive notice by publication, a strict compliance with the statute is required, and every act necessary to the exercise of a court's jurisdiction based on this mode of service must affirmatively appear in the mode prescribed by statute.'' 29 Cyc., 1122.

9. A comprehensive definition is as follows:

''Notice may, I think, be correctly defined as the information concerning a fact actually communicated to a party by an authorized person, or actually de-

rived by him from a proper source, or else presumed by law to have been acquired by him, which information is regarded as equivalent in its legal effects to full knowledge of the fact, and to which the law attributes the same consequences as would be imputed to knowledge. * * In dealing with the subject, great care should be taken to distinguish between notice and the evidence by which it is established. * * Whenever the notice is inferred by a conclusive or *prima facie* presumption from certain facts, the office of evidence is to prove the existence of those facts. Notice is either actual or constructive; but the legal effect of each kind, when established, is exactly the same." 2 Pomeroy's Equity Jurisprudence (3 ed.), § 594.

The plaintiffs allege a number of irregularities unnecessary for us to notice.

10. After a "County Court" has acquired jurisdiction by a lawful resolution, and has given due notice of the proceedings to establish a public highway, mere irregularities in subsequent proceedings will not nullify them: *French-Glenn Co.* v. *Harney County,* 36 Or. 138 (58 Pac. 35); *Jensen* v. *Curry County,* 55 Or. 54 (105 Pac. 96); *Heuel* v. *Wallowa County,* 76 Or. 354 (149 Pac. 77).

We will not again allude to error other than that affecting the jurisdiction of the "County Court." We will now examine the evidence relating to the situation of plaintiffs.

M. J. Lauderback, one of the plaintiffs, testified:

"Our land lies here. This is * * where we hold our stock, and the highway will cut off this piece. We have our slaughter-house buildings here (indicating).

"Q. This road cuts the slaughter-house off from the stock?

"A. Yes, sir, and also cuts the stock off from the water, and then every time we go to butcher, it takes several men to put one across there. To be safe you

would have to have about four men to put an animal across. * * We have spent a good many dollars putting up the slaughter-house and getting it equipped. It is all we have got. We have been ten years in the business. We started in with nothing and have just got where we can make a decent living. It takes out two or three acres of land that the county assessor assessed at almost one hundred dollars an acre, and leaves us a fence to build on either side.

"Q. How much do you say you are damaged?

"A. $3,000.00. We would have to find a new location. You see my brother lives up on this road and we live down here (indicating). It is very handy."

According to the plaintiff's evidence, neither they nor the other persons similarly situated had notice or information of the proceedings to establish the road until the proceedings were over and the county had entered upon the premises for the purpose of constructing the road. One of the plaintiffs testified:

"I never saw any notices until after they started work on our place, and I looked for notices after I found at the courthouse that they had been posted, and I found that notice on the fence not more than 2½ feet from the ground. That was after they were working on our place and I went out to look for the notice. * * I found it on the south side of the Powell Valley Road * * . It was just on a fence and there was a cedar hedge there and I sold meat to a meat customer within a couple of hundred feet of them notices twice every week and never saw it and passed it three or four times a day, as well as my brother passed it almost every day.

"Q. Was it in a conspicuous place?

"A. When I found it the fern had grown up past it and the limbs from a Japanese cedar hedge came through the fence and the notice could not be seen from the middle of the road.

"The Court: The witness states he knew there were notices posted?

"A. Not until after they went to work and they told me they had been posted. When I asked them what right they had on our place they told me. * * I know I would have seen them if they had been posted in a conspicuous place. I saw all the auction sales and things like that posted."

The notice found by the witness was received in evidence and marked "Plaintiffs' Exhibit A." It purports on its face to be a true copy of an unsigned resolution.

Ralph Johanson testified:

"Q. You live within a few feet of where they say they posted 'Plaintiffs' Exhibit A'?

"A. I am built about 30 feet off the road, and it would be across the road 60 feet,—would be 90 feet. * *

"Q. Were you very frequently along in the place pointed out on the map where they said they found this notice, 'Exhibit A'?

"A. I was along there all the way from six to twelve times a day.

"Q. Did you ever see that notice?

"A. I did * * *after they were working there.* * * I had to go over there and brush the stuff aside to see the notice. * * It was just shortly before Lauderbacks found it."

The road viewers assessed plaintiffs' damages at $1.00, notwithstanding their land adjoined two county roads already established and constructed.

Mrs. Mary Peterson, a resident of the vicinity, testified:

"I knew nothing of any proceedings * * until they began to work on Mr. Lauderback's place.

"Q. Then there was a big row?

"A. Telephones worked night and day. * * About 25 or 30 of us along the line got terribly excited * * . After they began work on Mr. Lauderback's place it was common conversation for a few days with we people interested, by wondering how they succeeded

in getting by without some of us knowing something about it.''

Like testimony was given by John Larson, Frank Gustafson, Edwin Simonson, and S. T. Lind, a cattle buyer, who says he was on the lookout for notices. It was stipulated that Mrs. H. C. Unis, Mrs. Edwin Simonson, Samuel Peterson, G. W. Kenney and J. M. Ferris, if called, ''will testify to substantially the same testimony as that given by the witnesses who have already been called.''

The defendant met plaintiffs' case with the testimony of an assistant roadmaster, who testified:

''The first thing I did was to post one notice on the bulletin board on the ground floor of the courthouse; * * then I posted three notices out on the road; one at the intersection of the Powell Valley and the proposed road, near the easterly end; and one at the intersection of the Boring Road and this proposed road, and one at the intersection of this proposed road with the Powell Valley Road just about a mile or three quarters of a mile east of Gresham.''

A map was offered in evidence showing the place of the posting of the notices.

Witness identified ''Plaintiffs' Exhibit A'' as one of the notices posted by him, and he testified that he had seen the notices in place since he had posted them.

A deputy clerk identified the notice, and testified that his name was partially obliterated from the same on account of the elements.

The county roadmaster testified that he had seen at least two of the notices that he could certify to, but one he merely glanced at.

''Q. Was it prior or subsequent to the establishment of the road by the county board?

"A. It was *subsequent to the establishment of the road.* The notices were posted notifying people that that is where the road would go."

The testimony of a number of witnesses, owners of real property affected by the road, is to the effect that they saw no notices. On the other hand, the deputy roadmaster testified that he posted the notices, and his testimony is corroborated by that of other witnesses who said they saw the notices after they were posted. The deputy county surveyor testified that he saw the notices and that two of them were properly signed, but that he didn't recall as to the third.

11. As a general rule, purely negative testimony is entitled to no weight, for—

"One single positive weighs more,
    You know, than negatives a score.
M. Prior,—Epistle to Fleetwood Shepherd."
2 Moore on Facts, Weight of Evidence, p. 1333.

However, if witnesses testify that they did not see something that they probably would have seen if it had occurred, their testimony may be strong evidence.

12. In the case at bar, the negative testimony is material and has value, because it was given by witnesses who resided in the immediate vicinity of the proposed road, who traveled to and fro along the way where it is claimed the notices were posted, two of whom say that they were on the lookout for notices, and all of whom were interested in the matter of the establishment of the public road.

13, 14. If the notices were properly posted, it is an unusual situation that thirty-two persons, whose property was being taken from them for the purpose of constructing a public highway, never learned of the matter until the defendant commenced the construc-

tion of the road by entering upon the premises condemned. But, should we admit, for the purpose of this opinion, that the notices were posted as asserted by defendant's witnesses, proof by advertisement as required by the statute falls far short of the mark set by statutory requirements. The notice introduced in the record is demonstrative evidence.

Referring to the weight of evidence:

"The highest proof of which any fact is susceptible is that which presents itself to the senses of a court or jury." 2 Moore on Facts, Weight of Evidence, § 1206.

"Plaintiffs' Exhibit A" is before us. It is claimed by plaintiffs, and admitted by defendant, that it is one of the four "true copies" of notice that the "County Court" ordered posted. It purports to be a copy of the resolution adopted and signed by the members of the court. The notice is typewritten and does not appear to be weatherbeaten; the language of the resolution is plain and distinct to the eye; but the names of the authorities who adopted the resolution are lacking. The plaintiffs made a *prima facie* case. The defendant has not overcome that case. Its proof has failed to place the signatures of the commissioners on their alleged resolution. The exhibit is dumb, but as evidence it is most effectual.

15. Recurring again to the proof of advertisement of the notice contained in the record: The "County Court" never acquired jurisdiction to establish the road. It adopted the resolution hereinbefore described, and it ordered it published by posting. But a prerequisite to the court's acquiring jurisdiction was the publication by posting of the notice according to law, and the filing of proof thereof with the court. The proof fails to show that the notice was posted in

three public places in the vicinity of the road, but, in lieu thereof, the affidavit of proof says that it was posted "in a conspicuous place." Again, from a perusal of the affidavit itself, the natural inference would be that two of the notices were posted sixty feet apart, in virtually the same place, but on opposite sides of the road. He says:

"I posted a notice on the south side of Powell Valley road where the proposed road intersects the Powell Valley road. * * Another of said notices I so posted on a telephone pole on the north side of the Powell Valley road where the proposed road intersects the Powell Valley road."

The purpose of notice is to inform interested persons, and the spirit of the law is not complied with by posting notices sixty feet apart for the location of a road three and one-half miles in length.

Concerning the necessity of requiring strict proof in the matter of acquiring jurisdiction, this court has said:

"If the County Court, in the matter of locating county roads, was a court of general jurisdiction, and entitled to have every intendment construed in its favor, the rule might be otherwise; but in view of its limited powers we do not feel like extending the rule beyond that announced in *Latimer* v. *Tillamook County,* 22 Or. 291 (29 Pac. 734). The proof shows that the notices were posted in the vicinity of the proposed road, but it nowhere appears that the places at which they were posted were public. Such service is constructive, and in all cases rests upon the presumption that the party affected thereby has seen the notice (Wade on Notice, § 1029), but this presumption cannot be invoked unless the proof shows that the notices have been posted in public places, and in such manner as to afford the parties affected thereby an opportunity of seeing and reading them. There is

nothing to show that these notices were posted in such a manner as to be seen and read by the public, and thus presumptively bring the knowledge of their contents home to the parties affected thereby. So far as the proof is concerned they may have been, like the laws of Caligula, written in very small characters, and hung upon high pillars, the more effectually to ensnare the people: 1 Blackstone's Commentaries, 46.'' *Cameron* v. *Wasco County,* 27 Or. 318, 325 (41 Pac. 160).

In the case of *McMillan* v. *Mason,* 70 Or. 133 (140 Pac. 445), the affidavit of posting was insufficient. While it particularly described the places where the notices were posted, it omitted to state that such places were public places in the vicinity of the road. However, the County Court, in its journal, made the usual entry, as did the court in the instant case, that notice ''has been given by advertisement in manner provided by law by posting at the place of holding County Court, and also at three public places in the vicinity of said proposed road.'' This court held, in that case, that the finding was not based upon any proof of record; that the proof of notice failed to show that notice had been posted in public places, and that no proof other than the defective affidavit was offered the court for consideration. In effect, it held that such finding must be based upon some showing of record. In the matter of supplying evidence to aid a defective affidavit, see *In re Riggs,* 105 Or. 531 (207 Pac. 175, 1005, 210 Pac. 217).

16. A journal entry aiding proof by affidavit which contains insufficient facts must be based upon some competent evidence of record.

We have heretofore referred to the resolution adopted and the order made by the court involving the location of the road.

17. The County Court is a court of record and, therefore, speaks through its journal.

18. The defendant pleads the adoption of the resolution and the order of the County Court in directing the giving of notice thereof. The answer shows that the record of the proceedings alluded to above was regularly signed by two members of the County Court. A "true copy" of that journal entry constitutes the "true copy" of the resolution required by statute to be posted.

The names of the commissioners then and there constituting the County Court and signing the recorded proceedings thereof are essential to the sufficiency of the notice: *Minard* v. *Douglas County,* 9 Or. 206.

The posted notice received in evidence in this cause purports to be a resolution that was adopted and ordered posted by "Board of County Commissioners of Multnomah County, Oregon, by ——, Chairman, by ——, Commissioner, by ——, Commissioner." Such a notice is insufficient, for "an unsigned notice is not a notice": *In re Willow Creek,* 74 Or. 592 (144 Pac. 505, 146 Pac. 475).

The plaintiffs are entitled to all rights guaranteed them by our fundamental law.

It clearly appears from the record that, if the proceedings of the County Court are held valid, plaintiffs have been deprived of two acres of valuable land and greatly damaged in their use of the remainder of their 40-acre tract, without compensation, and without a hearing.

This case is affirmed.

AFFIRMED. REHEARING DENIED.

19. The purported notice was posted in such manner that it covered the clerk's attestation that such notice was a certified copy of the resolution adopted

by the board of county commissioners.   Because of
the concealment of the clerk's certificate in posting
the notice, McBride, C. J., and McCourt, J., concur
in the result.

BEAN, J., Dissenting.—The plaintiffs, by this suit,
instituted a collateral attack upon the proceedings of
the County Court in laying out and establishing a
county road, known as the Mt. Hood Loop road in
Multnomah County, through the land of plaintiffs,
and seek the extraordinary remedy of an injunction
to restrain the county from constructing the road
which it is proceeding to do.   Defendant appeals from
a decree in favor of plaintiffs.

Plaintiffs allege that the proceedings by the board
of county commissioners in establishing such road
"have not been done in accordance with the law and
as in Chapter 295 of the 1917 Session Laws of Ore-
gon, in the following particulars":

"(1) Said H. B. Chapman, appointed by the de-
fendant, to give notice of said proposed road by post-
ing, neglected and failed to post true copies or any
copies of the resolution of the said Board of Commis-
sioners, certified to as such by the County Clerk, at
either end of said road or in any conspicuous place
along said proposed road, or as directed by the
County Court. * *

"(2) That the viewers appointed failed to take an
oath.

"(3) That the viewers failed to state the practic-
ability of the proposed road, or the necessity or rea-
son therefor.

"(4) That the viewers assessed the damages to
plaintiff's premises to a former owner of the land
instead of the plaintiffs."

A demurrer to the complaint was interposed on the ground of a want of jurisdiction, and failure to state facts sufficient to constitute a cause of suit. The demurrer was overruled and such ruling is assigned as error. The date and a copy of the resolution of the county commissioners, the description of the proposed road, the dates of the orders appointing the viewers and the filing of their report and the adoption of the same, and the description of the plaintiffs' land are set out in the complaint. It is also alleged that the plaintiffs did not see the notices. The alleged invalidity of the proceeding is based upon the facts first referred to.

It is conceded, that in order for plaintiffs to successfully attack the proceedings in establishing the county road in this suit, it must be shown that the county commissioners failed to obtain jurisdiction of the matter. It goes without saying, that the facts showing a want of such jurisdiction must first be stated in the complaint. The main thing, in the complaint, relied upon is in regard to the posting of the notices, which we quote above. Where proceedings for establishing a county road are initiated by resolution of the County Court, under Section 4556, Or. L., that section provides that after the resolution, notice shall be given as provided for upon filing of a petition for such purposes, and like proceedings shall be had by such County Court as in the case of the filing of a petition before it, asking for such improvement, except as hereinafter particularly specified. Subdivision (a) provides:

"The notices to be posted shall consist of true copies of the resolution of the county court, properly certified to as such by the county clerk, and the same shall be posted by the county roadmaster, or county

surveyor, or a duly qualified deputy, as directed by the County Court.''

It will be seen that the specification of illegality in regard to posting of the notices is, that the officer failed ''to post true copies or any copies of the resolution of the said board of commissioners certified to as such by the county clerk,'' and then proceeds in regard to the place. It is not indicated wherein the copies of the resolution were not true copies; for aught that appears in the complaint, it may be a lack of crossing a ''t'' or dotting an ''i,'' or some word like ''and'' or ''or'' omitted or interchanged. Or, looking further at the assertion, it might be held that a perfect resolution was not properly ''certified'' to as such by the county clerk. It is not suggested wherein the certificate of the county clerk is wanting; whether it is a mere matter of form or something connected with the substance. This is the most that can be claimed from the complaint.

In the specification in regard to the notices not being true certified copies, it is also stated that such copies were not posted at either end of said road, or in any conspicuous place along said proposed road. It is not alleged and it cannot be claimed that no notices were published along the line of the proposed road, or in the vicinity of the proposed road. It certainly is not the law that such notices should be posted at either end of the proposed road. Neither is it the law that the notice sould be posted along said proposed road. Section 4543, Or. L., requires such notices to be ''posted at the place of holding county court and also at three public places in the vicinity of the proposed road.'' There might be no public places along the line of a proposed road where such notices could be posted. The statute would be com-

plied with by such posting in the vicinity of the proposed road. Therefore, there is no material fact stated in the complaint to show that the proceedings establishing the county road in question were invalid, or that the County Court did not acquire jurisdiction of the matter. In order for plaintiffs to obtain the remedy for which they seek, that ought to be shown by their complaint. Positive averments of facts must be made showing that plaintiffs are entitled to the equitable relief prayed for in order to entitle them to the harsh remedy of an injunction; legal conclusions are insufficient: High on Injunction, § 34.

The plaintiffs did not appear in the County Court when the proceedings were had, they say, for the reason that they were not informed regarding the same. They did not contest the proceeding by an appeal to the Circuit Court, or upon a writ of review, and in order for them to successfully maintain a collateral attack upon the proceedings of the County Court establishing the county road, they ought, at least, to specify wherein such proceedings were invalid with as much particularity as though they had brought proceedings for a writ of review.

The second specification, upon which they based this suit, is that the viewers, appointed by the County Court in the matter, failed and neglected to take an oath. This is not a legal objection to the proceedings. Section 4545, Or. L., provides for the purpose of the act the county surveyor, roadmaster or any duly qualified deputy or assistant of whom an oath of office shall be required by law, shall be considered sworn upon qualifying for the duties of their office. It is not suggested that the viewers were not surveyors or roadmasters, or duly qualified deputies or assistants so as to necessitate their taking an oath.

There is mild criticism that the board of viewers, so appointed, failed to state the practicability of the proposed road or the necessity thereof. Whether this means they are divided in their opinion, and two of them recommended the road, giving their reasons therefor, or whether it is some informal matter, does not appear.

The plaintiffs also, as a reason for invalidating the county road in question, and laying the foundation for questioning the validity of one half of the county roads in the state, assert that the viewers failed to assess and determine how much less valuable were the premises through which the road is to be located in favor of the plaintiffs, but assessed the damages in favor of the former owner. The law in regard to this matter is contained in Section 4547, Or. L., and requires the board of viewers to "assess and determine how much less valuable the premises through which the said road is located, or is to be located, are, and set forth the same in their report." It is plain that the viewers are to assess the damages to the premises through which the road is proposed to be located. Any description of the premises which would indicate what damages thereto the viewers found would undoubtedly be sufficient.

The complaint is insufficient to warrant the granting of an extraordinary remedy of an injunction to the plaintiffs, and the demurrer thereto should have been sustained. The complaint of the plaintiffs, touching the proceedings relating to the county road in question, suggests no more than mere irregularities, which do not go to the jurisdiction of the County Court; all else therein are mere conclusions: See *Wingate* v. *Astoria,* 39 Or. 603, 604 (65 Pac. 982, 6

Munic. Corp. Cas. 815); *Wilson* v. *City of Salem,* 24 Or. 504 (34 Pac. 9); *Barkley* v. *Oregon City,* 24 Or. 515 (33 Pac. 978). After a County Court has once acquired jurisdiction in such proceedings mere irregularities in subsequent proceedings will not render them invalid: *Heuel* v. *Wallowa Co.,* 76 Or. 354, 360 (149 Pac. 77); *French-Glenn Co.* v. *Harney Co.,* 36 Or. 138 (58 Pac. 35); *Jensen* v. *Curry Co.,* 55 Or. 54 (105 Pac. 96); *Morton* v. *Hood River,* 88 Or. 144 (171 Pac. 584).

The construction of plaintiffs' complaint, which we have given, is not only authorized by law, but also by the claim made by plaintiffs in the complaint itself. In the next paragraph (No. 9) after the one construed, plaintiffs assert:

"That on account of the failure of the defendant to cause to be posted true copies of the resolution of said Board of County Commissioners, properly certified to as such by the County Clerk, and by failure to post such notices or any notice, at either end of said proposed road or at any point along the line of said proposed road, the plaintiffs never obtained notice nor had actual notice thereof prior to the time of the first reading of said resolution * * *"

If we tread upon forbidden ground and look beyond the complaint to ascertain the cause of plaintiffs' criticism of the copies of the resolution posted as notices, or why they were not "true copies," we find that plaintiffs assert that all of the copies of resolution did not contain the names of the commissioners. Here again, the plaintiffs would require something to be done in the matter that the law does not. Section 4556 provides that "the County Court of any county at a regular term may by resolution declare its intention to locate, establish" or change any road.

It is for the County Court to adopt such a resolution. The statute does not require the County Court to sign such resolution. The orderly procedure would be for the same to be entered in the journal of the court. It is not averred by plaintiff that this was not done. Under the law, as enacted by this section, the copies of the resolution to be posted as notices are to be signed by the county clerk or authenticated by the certificate of the county clerk. Indeed, in paragraph III of their complaint, plaintiffs aver that the county commissioners ''adopted the following resolution''; then, they set out what they alleged to be a copy of the resolution, which does not have appended thereto the names of the commissioners.

The defendant set forth the proceedings taken establishing the road. It appears that the record proof of posting the notices, which was before the County Court, consisted of the affidavit of H. B. Chapman, the duly qualified deputy county roadmaster for Multnomah, showing that on the thirteenth day of January, 1922, and more than thirty days prior to time of the order of the County Court directing the viewers to view, survey and locate the road, he personally posted the notices, a copy of which was attached to the affidavit, at the following places. (The remainder of the affidavit reads thus:)

''One of said notices I so posted on said day at the place of holding County Court in said county, to wit: at a conspicuous place on the bulletin board in the county courthouse of said county and state. Another of said notices I so posted on a fence on the south side of Powell Valley Road where the proposed road intersects the Powell Valley Road. Another of said notices I so posted on a telephone pole on the east side of the Boring Road, where the proposed road intersects the Boring Road. Another of said notices

I so posted on a telephone pole on the north side of the Powell Valley Road where the proposed road intersects the Powell Valley Road.

"That each and all of said notices were so posted by me on said day in a conspicuous place in such a manner that it could be easily read by passersby."

The affidavit, while it does not use the same language as found in the statute, clearly shows that one of the notices was posted at the place of holding the County Court. This is not questioned. The other three notices were each posted on the side of a public traveled road, which is unquestionably a public place. The affidavit also plainly shows that each notice was posted in a conspicuous place in such a manner that it could be easily read by passersby. The statement that the notices were posted where the proposed road intersects the other roads named, shows that the notices were each posted in the vicinity of the proposed road. In other words, the facts showing proper posting of the notices are stated in the affidavit so that the court could see and find that three notices were posted, "at three public places in the vicinity of the proposed road." This was a strict compliance with Section 4543, Or. L., which governs the matter.

The proposed county road is about 3½ miles long. It intersects two county roads. The map in evidence shows that it intersects the Powell Valley road near the east end of the proposed road and also at the west end. It is objected that one of the notices was posted on the south side of the Powell Valley road where the proposed road intersects the Powell Valley road, and another on the north side of the Powell Valley road where the proposed road intersects the Powell Valley road, claiming they were only 60 feet apart. Mr. H. B. Chapman, deputy county roadmas-

ter, was a witness upon the trial in the Circuit Court and testified in explanation of the affidavit of posting, to the effect that one of the notices was so posted at the intersection and on the south side of the Powell Valley road, about 2,000 feet from the eastern terminus of the proposed road. Another, at its intersection of the Boring road, and a third on the north side of the Powell Valley road at the westerly terminus of the new road: *Smith* v. *Jefferson,* 75 Or. 179, 193 (146 Pac. 809).

We fail to see how it can be claimed that two of the notices were posted only 60 feet apart. The language of the affidavit quoted does not indicate that the two notices were posted at the same intersection of the new road with the Powell Valley road. It appears that both the Boring road and Powell Valley road are heavily traveled highways. One of the certified copies of the notices posted, which had been subjected to the elements for some time, was introduced in evidence. It contained all of the information required by the statute and is sufficient to inform a reader thereof that the County Court intended to establish a county road, as particularly described in the resolution, and fixed a definite time and place for hearing objections and remonstrances against the establishment of the road. The following is appended thereto:

> "Board of County Commissioners of Multnomah County, Oregon.
>
> "By ——————————,
> "Chairman.
> "By ——————————,
> "Commissioner.
> "By ——————————,
> "Commissioner."

To this copy is attached the proper certificate of the county clerk signed thus:

"Jos. W. Beveridge, County Clerk of Multnomah County,

"By ——————————,

"Deputy."

The signature of the deputy clerk appears to have been nearly obliterated. The deputy county roadmaster testified that when posted, the copy contained the names of the commissioners where there are blanks therefor, and that the signatures had been "washed off." As heretofore pointed out, the notices were legally sufficient: *Giesy* v. *Marion County,* 91 Or. 451, 453 (178 Pac. 598); *Lord* v. *County Commrs.,* 105 Me. 556, 561 (75 Atl. 126, 18 Ann. Cas. 665). The proceedings of the County Court in the road matter in question were stronger from a legal standpoint than is the pleading of plaintiffs.

I am unable to concur in the findings of Mr. Justice Brown that the testimony of plaintiffs makes a *prima facie* case.

In order that a different kind of a notice for the establishment of a county road be given, it would be necessary for the lawmakers to change the statute. Plaintiffs had constructive notice of the road proceedings and were constructively in court when the report of the viewers was adopted. The record does not suggest anything unfair in the proceedings. It appears from the record that the plaintiffs entered into a contract with Sarah B. Abernathy for the sale by the plaintiffs and the purchase by Mrs. Abernathy of the land of which plaintiffs complain the road passes over. A part of the purchase price was paid. It is alleged that Mrs. Abernathy was the owner of the premises at the time of the road proceedings in

question. This question is disposed of by the opinion in *Morton* v. *Hood River County*, 88 Or. 144 (171 Pac. 584), in which this court, at page 147 of the Or. Report, said:

"The court obtained jurisdiction by the filing of the petition and proof of posting the notices as required by law. Thereafter, it was the duty of the appellants, who claim to be the landholders along the route of the proposed road, to have seasonably presented their claim for damages, stating the facts as to ownership. It is no part of the road viewers' duties to settle or even investigate conflicting claims to the lands through which the road passes. In a general way they assess the damages to the tracts, and the owners being constructively in court by reason of the posting of the notices of the application, should file their claim for damages in the County Court, or by appeal to the Circuit Court, litigate the question of ownership, as well as the amount of damages."

For the foregoing reasons I am unable to concur in the opinion by Mr. Justice BROWN. The judgment of the Circuit Court should be reversed and the suit dismissed.